## WILSON v. THE STATE.

[No. 2,256. Filed April 27, 1897. Rehearing denied Feb. 24, 1898.]

INTOXICATING LIQUORS.— *Permitting Persons to go in Saloon on Days When Sale of Liquor is Prohibited.—Nicholson Law.*—In a prosecution under section 5323c, Horner's R. S. 1897 (Acts 1895, p. 248), making it unlawful for the proprietor of a saloon to permit any person or persons other than members of his family to go into the room and place where intoxicating liquors are sold upon such days or hours when the sale of such liquors is prohibited by law, evidence that the bartender who was in charge of the saloon during the absence of defendant from the city, entered the saloon on Sunday during such absence, and against the positive instructions of defendant not to enter the saloon on days and hours prohibited by law, is not sufficient to justify a conviction of the proprietor for such act of his bartender.

From the Marion Criminal Court. *Reversed.*

*Kealing & Hugg*, for appellant.

*W. A. Ketcham*, Attorney-General, *F. E. Matson* and *Merrill Moores*, for State.

HENLEY, J.—This was a prosecution under that part of section 3 of the act generally known as the "Nicholson Law," section 5323c, Horner's R. S. 1897 (Acts 1895, p. 248), which is as follows: "It is hereby made unlawful for the proprietor of such a place, and the business herein contemplated of selling intoxicating liquors, to permit any person or persons other than himself and family to go into such room and place where intoxicating liquors are so sold upon such days and hours when the sale of such liquors is prohibited by law." Appellant was tried, convicted and fined. The sufficiency of the affidavit charging the misdemeanor is not questioned.

The only error assigned here is that the lower court erred in overruling the appellant's motion for a new trial, and the only question presented by the motion for a new trial and argued by appellant's counsel, is that the evidence is not sufficient to authorize a conviction. The evidence in the cause was uncontradicted and there is no conflict in any part of it.

Eli Buchanan, the first witness called, testified that he was a member of the police force of West Indianapolis; that he knew the appellant, and that he (appellant) was engaged in the saloon business at the corner of Howard and Reisner streets in said city; that the witness was acquainted with James Bowers, and that Bowers was engaged as bartender at appellant's place on the 18th day of August, 1895; that the witness on said day, in company with William Roy, went to appellant's saloon, and witness stood at the front of said saloon and said Roy went to the rear; that witness saw Bowers coming into the saloon with three or four glasses in his hands, and saw him draw some beer and go back out of the room; that this occurred on Sunday, August 18th, 1895; that said Bowers was not a member of appellant's family. Witness also testified that he did not see appellant about the place that day. The testimony of William Roy for appellee was almost identical with that of the witness Buchanan. The appellee then proved the venue, and rested its case.

Appellant's evidence in his own behalf was that on the 18th day of August, 1895, he was in Martinsville, Indiana; that he went to Martinsville on the 10th of July, 1895, and remained there during the month of August; that James Bowers was his bartender, and he had left him in charge of the saloon as such bartender when he went away; that he gave Bowers positive instructions to keep out of the saloon

after eleven o'clock at night and on Sundays and holidays, and all prohibited hours; that he further told him that as to cleaning out the room on Saturday nights, for him not to do it until Monday morning, and under no circumstances to go into the saloon after eleven o'clock at night or on Sundays, or any legal holiday; and that, if said Bowers was there on Sunday, August 18th, 1895, he was there without appellant's consent; and that he did not permit him to go into the saloon on Sundays. Upon cross-examination he testified that Bowers had the keys of the saloon, and had charge of the place as his bartender in his absence, and that said Bowers continued as his bartender until October following.

James Bowers, the bartender, whose presence in the saloon building on Sunday constituted the offense with which appellant is charged, testified that on the 18th day of August, 1895, the appellant was at Martinsville, and had been away about two weeks before that time; that the appellant returned from Martinsville on Tuesday or Wednesday following the 18th day of August, and afterwards returned again to Martinsville; that while the appellant was gone, witness had charge of appellant's saloon business, and that the witness was instructed by appellant not to go into the saloon at any time prohibited by law.

The language of the statute is: "It is hereby made unlawful, etc., etc., to permit any person or persons other than himself and family, etc." The question, then, is, can appellant be held responsible for the acts of his bartender, the same being done in direct violation of his orders? We do not believe that an employe or agent can render his principal liable criminally on account of the act of the agent, when the act was done without the consent and in direct violation of the orders given the agent in that regard. A

different rule obtains in civil causes, the act of the agent in many instances being sufficient to subject the principal to an action for damages.   See *City of Hammond* v. *New York, etc., R. W. Co.,* 5 Ind. App. 526.

It cannot be said that putting it within the power of another to do an act means a permission to do such act.   In the case of the *City of Chicago* v. *Stearns,* 105 Ill. 558, it was said: "It will be observed that the instruction contains the words 'was permitted to remain out of repair.'   Webster, in referring to the words 'permit,' 'allow,' and 'suffer,' says, 'permit is the most positive, denoting a decided assent.'   From this definition it is plain that if the city assented it did so from a knowledge of the condition of the walk,—the assent implied knowledge."   In the case of *Gregory* v. *United States,* found in 17 Blatchf., page 325, the defendant was convicted of a violation of a statute which subjected him to a penalty and forfeiture of property for *permitting* his premises to be used for the purpose of ingress or egress to or from an illicit distillery.   Upon appeal Justice Blatchford held that the defendant, to be guilty under such a statute, must have known of the illegal use to which his premises were being put.   In speaking of the use of the words "suffer" and "permit," it was said (in the same case, page 331): "Every definition of 'suffer' and 'permit' includes knowledge of what is to be done under the sufferance and permission, and intention, that what is done is what is to be done."   The learned judge who wrote the opinion in the case above referred to also held that the word "knowingly," preceding the word "permit" added no force to the word "permit" as imparting knowledge to the defendant, as permission implied both knowledge and assent.

It will be noticed that the word "permit," only, is used in this section of the statute, while in some other

sections of the same act the words "allow, suffer or permit" are used in defining the misdemeanor therein set out. Thus, section 5 of this act (Acts 1895, p. 250) says: "Any person engaged in the sale of spirituous, vinous malt liquors or any intoxicating liquors to be drank as a beverage, who shall allow, suffer or permit any person under the age of twenty-one years, etc."

When we refer to the acknowledged authority of this country as to the meaning of the word "permit" we find its meaning to be "to grant leave or liberty to by express consent;" "allow expressly;" "Give leave, liberty, or license, to;" "to allow to be done by consent or by not prohibiting." The word "permit" is derived from the Latin *permittere*, which means "to concede, to give leave, to grant."

It is one of the underlying principles of our criminal law that a man shall not be deemed guilty of a crime in the absence of a wrongful intent. It is also the acknowledged rule of both this country and England that penal laws are to be strictly construed; and, that if the words of a statute are capable of two constructions, one of which would, while the other would not make an act criminal, then the one which would not, is to be taken as the true construction.

Sutherland, in his work on Statutory Construction, section 349, says: "The penal law is intended to regulate the conduct of people of all grades of intelligence within the scope of responsibility. It is therefore essential to its justice and humanity that it be expressed in language which they can easily comprehend; that it be held obligatory only in the sense in which all can and will understand it. And this consideration presses with increasing weight according to the severity of the penalty. Hence, every provision affecting any element of a criminal offense involving life or liberty is subject to the strictest in-

terpretation; and every provision intended for the benefit of the accused, for the same humane reason, receives the most favorable construction. 'The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislature, not in the judicial department. It is the legislature, not the court, which is to define a crime and ordain its punishment. * * * The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words there is no room for construction. The case must be a very strong one indeed which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case which is within the reason and mischief of a statute is within its provisions so far as to punish a crime not enumerated in the statute because of equal atrocity, or of a kindred character, with those which are enumerated.' "

And at section 350, the same author says: "A penal statute cannot be extended by implication or construction. It cannot be made to embrace cases not within the letter, though within the reason and policy of the law. Although a case may be within the mischief intended to be remedied by a penal act, that fact affords no sufficient reason for construing it so as to extend it to cases not within the correct and ordinary meaning of its language. And as a general rule where a penalty is affixed by a statute to an act or omission, such penalty is the only punishment or

loss incurred by the guilty party. To constitute the offense the act must be both within the letter and spirit of the statute defining it. Penal statutes can never be extended by mere implication to either persons or things not expressly brought within their terms." Also, see State v. Bruner, 135 Ind. 419.

If the mere fact that a person other than the proprietor or some member of his family is seen to enter or be within a place where intoxicants are sold under this act made the person so entering or being therein guilty of a crime for such entry and presence therein, then the abuses complained of by appellee's counsel could not exist. We are not inclined to hold appellant responsible for alleged defects in the law. If we permit this judgment to stand, we cannot see how honest-meaning dealers can be protected, nor do we wish to place generally in the criminal law of this State such a principle as that a man may be held guilty of a crime caused by the act of another when that act was done in his absence, and against his express command. Nowhere have we been able to find where the courts compelled a man involuntarily and against his will to be guilty of a crime, against the commission of which he protested, was not present when it was committed, and the evidence showed he tried to prevent.

We are not establishing any new doctrine or rule by which offenders of the law may, by the aid of perjured testimony, escape a just punishment, but in this matter, as in all others, this court is governed by the decisions of the Supreme Court.

Thus, in Lauer v. State, 24 Ind. 131, the court said: "The evidence clearly proved the sales charged in the several indictments, but that on one occasion, being the first time that the boy was furnished liquor at the defendant's saloon, and the only time that it was

shown the defendant had any knowledge of it, the liquor was furnished at the request of the boy's father, who was present. The boy was sick at the time, and the father made the purchase of whiskey with pepper in it, for the boy. To this both the boy and the barkeeper of the defendant testified. The latter testified, also, that the father told him to let the boy have what he wanted; but whether this was a general permission or only related to that one occasion, is not clear. Subsequently the barkeeper sold ale to the boy on as many occasions as there are indictments, and continued to do so until the father expressly forbade it. There was no proof that the defendant had any knowledge of these sales, or that he authorized them; but, on the contrary, it appeared that he expressly instructed the barkeeper not to sell to persons under age, and not to sell in violation of the law. It is contended that the evidence did not support the verdict. * ' * * But the cases must be reversed, because there was nothing in the evidence from which the inference could be drawn that the defendant either did the acts charged in the indictment, or that they were done by his authority or consent, express or implied, or even with his knowledge. We must not hold men responsible for crimes committed by others, without some proof that they either procured, counseled or advised their perpetration. We know full well, that in this class of cases, the guilty may sometimes escape for a failure of this proof, and that it may sometimes be impossible to produce it in cases where it exists. But these considerations are also applicable to every other class of crimes. The guilty frequently go unpunished for lack of proof, but this is better than that the innocent shall be punished as well as the guilty. The law upon this subject is well settled."

And in *Hanson* v. *State*, 43 Ind. 550, the court says: "The section on which the indictment is founded ·makes it penal if the defendant, by himself or his agent, sold to the minor. But can we presume that the defendant, when he left the bartender in charge of the bar, made him his agent to sell to a minor, an act which would be in violation of law? There is no evidence that he authorized any such sale. If that fact can be found, it must result as an·inference from the fact that the bartender was left in charge of the bar. We think that no such inference from that fact alone, can arise. If it had been shown that the defendant had authorized and instructed his barkeeper to sell to the infant in question, or to infants generally, or if he had been present authorizing or assenting to the sale to the minor, the case would be different. As the evidence does not show that the bartender was the agent of the defendant to make the sale in question, we think that, on this point in the case, it was not sufficient to justify the finding of the court."

And in *O'Leary* v. *State*, 44 Ind. 91, the court said: "The evidence shows that the defendant was a saloon keeper in the city of Indianapolis; that he had given orders not to sell to Anderson any liquors; that the liquors sold to him were sold by a bartender of the appellant, in the absence of the latter, without his knowledge or consent, and against his express direction. On this state of facts the conviction cannot be sustained."

Also, in *Thompson* v. *State*, 45 Ind. 495, the court said: "On the trial, it appeared that the defendant, Thompson, was the proprietor of a saloon in Indianapolis; that on or about the 25th day of June, 1873, a young man, who was under twenty-one years of age, together with another young man, went into the

saloon and purchased some whiskey of the barkeeper. The defendant was not present, but, on the contrary, he was out of the city at the time of the sale, and there was nothing in the evidence tending to show that he had authorized his barkeeper to sell to minors, or in any manner in violation of law.    On this evidence, the conviction cannot be sustained, as has been held in several cases in this court."

And in *Zeller* v. *State*, 46 Ind. 304, the court said: "This was an indictment against the appellant for selling intoxicating liquor to a minor.    The only question in the case as presented by counsel is, was the evidence sufficient to justify the verdict of the jury?    The evidence does not clearly connect the defendant with the sale of liquor, by showing that he sold it to the minor, directed the sale, or was present assenting to it.    *    *    *    The judgment is reversed." Also, see *City of Hammond* v. *New York, etc., R. W. Co.*, 5 Ind. App. 526.

In this case there was absolutely no evidence that appellant permitted Bowers to go into the saloon, or knew he was in the saloon, in prohibited hours, or in any way assented to it.    On the contrary, the uncontradicted, unimpeached evidence is to the effect that appellant did all he could reasonably be expected to do to prevent the violation of the law at his place of business.    We are of the opinion that appellant should not be punished simply because the statute upon which this prosecution is based does not provide a punishment for the person who, not being a proprietor or member of the family of the proprietor, is found in a place where intoxicants are sold under the statute during prohibited days and hours.    Nor do we believe that in holding the evidence insufficient to justify a conviction we are weighing the evidence, because we are satisfied that, under the authorities,

the undisputed facts in this case, much stronger than the facts relied upon in either of the cases cited herein, demanded an acquittal of the appellant. See *White* v. *State*, 136 Ind. 308, and *Stout* v. *State*, 78 Ind. 492.

The sufficiency of the evidence herein upon other matters is argued by counsel for appellant, but, having arrived at the conclusion above stated, it is unnecessary for us to discuss any other question raised. The judgment is reversed, with instruction to the court below to sustain the motion for a new trial.

## DISSENTING OPINION.

COMSTOCK, C. J.—The question in this case is not whether an innocent man should be punished for an offense committed by another without his knowledge and against his instruction, but whether this court will weigh the evidence passed upon by the jury. The evidence below, as shown by the record, is that the barkeeper was seen upon the Sunday charged in the indictment carrying beer in glasses in the saloon; that he had been entrusted by the defendant with the key to the saloon, and had the management thereof in the absence of the defendant, who was the employer; that the offense was committed August 18, 1895; the arrest made August 21, 1895, and the barkeeper retained in his employ until October, 1895. This made, under the statute, a *prima facie* case, upon which the court or jury were authorized to return a verdict of guilty. To rebut this *prima facie* case, defendant testified that he was absent from the county (Marion) when the law was violated; that he did not know of the presence of the barkeeper in his place of business; that he had ordered him to stay out of the saloon on Sundays.

The court heard and saw the defendant and other witnesses testify; judged of their credibility by their

manner and their interest; could believe or disregard
the testimony of either of them where there was a
conflict.   The court found that the *prima facie* case
made out by the State was not overthrown.   It may
have erred, but under the law it was its province to
pass upon the weight of the testimony and the
credibility of the witnesses.   The jurisdiction of ap-
pellate courts is limited to the correction of errors
of law.   The question here involved is fully discussed
by the Supreme Court in *Deal* v. *State*, 140 Ind. 354,
an opinion frequently cited in later decisions in this
State.   In that opinion McCabe, C. J., speaking for
the court, on page 359, said: "Our jurisdiction in the
consideration of questions on appeal is limited to
errors of law only.   That excludes from our consider-
ation on appeal errors of fact."

In chancery cases the court weighs the evidence
and makes a final disposition of the case upon the
merits.   *Gale* v. *Grannis*, 9 Ind. 140; *Leach* v. *Leach*, 10
Ind. 271.

The correction of errors of fact into which a court
or jury may fall is exclusively with the trial judge.
When the jury finds against the clear preponderance
of the evidence, the verdict is not sustained by suf-
ficient evidence within the meaning of the sixth sub-
division of section 568, Burns' R. S. 1894, author-
izing a new trial.   That constitutes an error of fact
and not of law.   It is the bounden duty of the trial
judge to correct such error.   "When he overrules the
motion for a new trial, based on that ground, he
thereby says to us that with all his superior means
of determining the weight of the evidence after calmly
reviewing it, he is of the opinion that the prepon-
derance thereof fully sustains the verdict or finding.
In such a case the legislature has withheld from us
the power to review his acts.   And this power is evi-

dently withheld for the manifest reason that the jury and trial court had so much better means and opportunity of weighing the evidence than this court can have.   *   *   *   When the trial court makes a mistake and commits an error of law against him, if it be materially prejudicial or harmful to his rights, then he has not had his one fair trial, and it is the duty of the trial court to grant him a new trial, and if it refuses to do so, this court can, for the error of law, reverse and order a new trial.   To confer the power on this court, to review the question of fact, would be a violation of that policy, by giving each litigant a right to two fair trials instead of one.   The good order and peace of society forbids the opening up of controversies that have been once tried and adjudicated in a fair trial." *Deal* v. *State, supra.*

Believing that the opinion of the majority of this court is clearly, in the face of *Deal* v. *State, supra,* and many other decisions of the Supreme Court, that it, in effect, announces the proposition that after a *prima facie* case has been made by the State against a party charged with the violation of a criminal statute the undisputed testimony of the defendant to the contrary relieves him from liability, and takes from the court or jury the right to judge of the credibility of the witnesses, I am constrained to dissent from said opinion.

Robinson, J., concurs in the views expressed by Comstock, C. J., in the dissenting opinion.