UNITED STATES v. OREGON–WASHINGTON R. & NAVIGATION CO.

(District Court, E. D. Washington, N. D. April 23, 1914.)

No. 1751.

1. MASTER AND SERVANT (§ 13*)—STATUTORY REGULATIONS—HOURS OF SERVICE.

Act March 4, 1907, c. 2939, 34 Stat. 1415 (U. S. Comp. St. Supp. 1911, p. 1321), making it unlawful for common carriers by railroad engaged in interstate commerce to require or permit certain employés to remain on duty for longer periods than those therein specified, imposes a positive and absolute duty on the carrier, the nonperformance of which is not excused by the exercise of reasonable diligence or due care on their part.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 13*)—STATUTORY REGULATIONS—HOURS OF SERV-
    ICE—"REQUIRE"—"PERMIT."
        Under Act March 4, 1907, c. 2939, 34 Stat. 1415 (U. S. Comp. St. Supp.
    1911, p. 1321), providing that no telegraph operator shall be required or
    permitted by any common carrier by railroad engaged in interstate com-
    merce to remain on duty longer than 9 hours in any 24-hour period at sta-
    tions continuously operated night and day, and providing in section 3 that
    the carrier shall be deemed to have had knowledge of all acts of all its
    officers and agents, it was not a defense to an action for a penalty that
    the operator violated the instructions of his superior officers, or that they
    did not know that he worked excessive hours, since, while "require" or
    "permit" in their common significance imply consent or knowledge, "per-
    mit" also means a failure to prohibit by one who has the power and au-
    thority to do so, and is so used in the statute, and the provision of sec-
    tion 3 is not limited to general officers or agents as their knowledge was
    imputed to the company by the common law and the statute is not merely
    declaratory of the common law.
        [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14;
    Dec. Dig. § 13.*
        For other definitions, see Words and Phrases, vol. 7, pp. 6122–6125;
    vol. 6, pp. 5315–5318; vol. 8, p. 7752.]

Action for penalties by the United States against the Oregon-Wash-
ington Railroad & Navigation Company. Judgment for the United
States.

Francis A. Garrecht, U. S. Atty., of Spokane, Wash., and Otis B.
Kent, Sp. Asst. U. S. Atty., of Washington, D. C.
Hamblen & Gilbert, of Spokane, Wash., for defendant.

RUDKIN, District Judge. This is an action to recover penalties
for violation of the act of Congress of March 4, 1907, entitled "An
act to promote the safety of employés and travelers upon railroads by
limiting the hours of service of employés thereon" (34 Stat. 1415),
commonly known as the "Hours of Service Act." The complaint con-
tains 10 counts or causes of action in all, the first based on excessive
hours of service by an employé named Longabaugh on the 21st day of
April, 1913, and the remaining nine on excessive hours of service by
the same employé on the nine succeeding days. When the case was
called for trial a jury was impaneled and sworn, but the parties there-
after agreed upon the facts, and the jury was discharged by consent,
and the cause submitted to the court on a written stipulation. From
this stipulation it appears that the defendant corporation is a common
carrier by railroad engaged in interstate commerce; that Wallula, an
office on its line of railway, is a station continuously operated night
and day; that on the 21st day of April, 1913, and on each of the nine
succeeding days, the employé, Longabaugh, went on duty as agent at
that place at the hour of 7 o'clock a. m., and remained on duty con-
tinuously as such agent until the hour of 7 o'clock p. m., and thereafter
remained on duty continuously as a telegraph operator, and, by use of
the telegraph, dispatched, reported, transmitted, received, and deliver-
ed orders pertaining to or affecting train movements until the hour of
12 o'clock midnight; that before the employé, Longabaugh, had per-
formed any excessive hours of service he was instructed by his superi-

or officer not to work in excess of 9 hours in any 24-hour period, either as agent or operator, or in both capacities, and that he remained on duty for a longer period than 9 successive hours in violation of such instructions and without the actual knowledge of his superior officers. The sole question presented for decision, therefore, is: Did the instructions to the employé not to violate the law, or want of knowledge of a violation of the law on the part of his superior officers, constitute a defense?

[1] It is now well settled that the Safety Appliance Act and kindred statutes impose positive and absolute duties on carriers, the nonperformance of which is not excused by the exercise of reasonable diligence or due care on their part, and the Hours of Service Act admits of no other rational construction. St. Louis & Iron Mountain Ry. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; C., B. & Q. Ry. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; Delk v. St. Louis & San Francisco R. R., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590.

[2] It is urged that the words "require or permit" imply consent or knowledge on the part of the employer, and this is perhaps their common significance; but the word "permit" also means a failure to prohibit by one who has the power and authority to do so, and in my opinion the term is here used in the latter sense. In the United States v. San Francisco Bridge Co. (D. C.) 88 Fed. 891, cited by the defendant, section 2 of the act under consideration expressly provided:

That any officer or agent of the government of the United States or of the District of Columbia, or any contractor or subcontractor whose duty it shall be to employ, direct, or control any laborer or mechanic employed upon any of the public works of the United States or of the District of Columbia, who shall intentionally violate any provision of this act, shall be guilty of a misdemeanor.

The criminal intent was there made a part of the offense by express legislative enactment, and the word "permit" was of necessity given the meaning here contended for by the defendant. But the act now under consideration expressly provides in section 3 that "in all prosecutions under this act the common carrier shall be deemed to have had knowledge of all acts of all its officers and agents," and this provision eliminates all questions of knowledge or criminal intent.

Nor can the expression, "all its officers and agents," be limited to general officers and agents, as claimed by the defendant. The knowledge of such general officers or agents is imputed to the company by the common law, and it is very apparent that the statute in question is not merely declaratory of the common law. As said by the court in the Taylor Case, supra:

In the case before us the liability of the defendant does not grow out of the common-law duty of master to servant. The Congress, not satisfied with the common-law duty and its resulting liability, has prescribed and defined the law by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that "no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard." There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the Legislature was to supplant the qualified duty of the common law with an absolute

duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it. It is urged that this is a harsh construction. To this we reply that if it be the true construction, its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the lawmaking body. It is said that the liability under the statute, as thus construed, imposes so great a hardship upon the railroads that it ought not to be supposed that Congress intended it. Certainly the statute ought not to be given an absurd or utterly unreasonable interpretation, leading to hardship and injustice, if any other interpretation is reasonably possible. But this argument is a dangerous one, and never should be heeded where the hardship would be occasional and exceptional. It would be better, it was once said by Lord Eldon, to look hardship in the face rather than break down the rules of law. But when applied to the case at bar the argument of hardship is plausible only when the attention is directed to the material interest of the employer, to the exclusion of the interests of the employé and of the public. Where an injury happens through the absence of a safe drawbar, there must be hardship. Such an injury must be an irreparable misfortune to some one. If it must be borne entirely by him who suffers it, that is a hardship to him. If its burden is transferred, as far as it is capable of transfer, to the employer, it is a hardship to him. It is quite conceivable that Congress, contemplating the inevitable hardship of such injuries, and hoping to diminish the economic loss to the community resulting from them, should deem it wise to impose their burdens upon those who could measurably control their causes, instead of upon those who are in the main helpless in that regard. Such a policy would be intelligible, and, to say the least, not so unreasonable as to require us to doubt that it was intended, and to seek some unnatural interpretation of common words.

For these reasons I am of opinion that the knowledge of the agent, Longabaugh, was the knowledge of the company, and that the instructions given by his superior officer not to work excessive hours, or a want of knowledge on the part of his superior officers that he did in fact work excessive hours, is no defense.

I therefore adjudge the defendant guilty on all counts, and impose a fine of $100 and costs for each violation.