## UNITED STATES v. OREGON-WASHINGTON R. & NAV. CO.

(District Court, D. Oregon. December 14, 1914.)

### No. 6461.

MASTER AND SERVANT (§ 13*)—STATUTORY REGULATION—HOURS OF SERVICE— "PERMIT"—"AGENT"—"EMPLOYÉ."

Act March 4, 1907, c. 2939, 34 Stat. 1416 (Comp. St. 1913, § 8678) § 2, providing that no telegraph operator shall be required or permitted by interstate carriers to remain on duty for longer than 9 hours in any 24-hour period at places and stations continuously operated night and day, and section 3 (section 8679) providing that the carrier shall be deemed to have had full knowledge of all acts of all its officers and agents, imposes an absolute duty upon the carrier, and reasonable care or want of knowledge of the violation on the part of the officers and agents of the carrier, other than the operator himself, constitutes no defense, since, while the primary significance of the word "permit" implies knowledge of the thing suffered or allowed to be done, the statute specifically declares that the carrier shall be deemed to have had knowledge, and, in so declaring, it does not, as claimed, distinguish between officers and agents on the one hand and employés on the other, but uses the term "agents," in its broadest sense, as including every relation in which one person acts for or represents another by his authority, especially in view of the provision that "employés" shall be held to mean persons actually engaged in or connected with the movement of any train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, First and Second Series, Agent; Employé; Permission.]

At Law. Action by the United States against the Oregon-Washington Railroad & Navigation Company. Directed verdict for the government, and defendant moves for a new trial. Motion denied.

Clarence L. Reames, U. S. Atty., of Portland, Or., Otis B. Kent, Sp. Asst. U. S. Atty., of Washington, D. C.; Robert R. Rankin, Asst. U. S. Atty., of Portland, Or.

W. W. Cotton, Arthur C. Spencer, and Charles E. Cochran, all of Portland, Or., for defendant.

WOLVERTON, District Judge. This cause was presented on the theory that the court ought to instruct the jury, as a matter of law, to find either for the plaintiff or for the defendant. After argument, the court instructed the jury to find for the government, but at once directed the defendant to file a motion to set aside the verdict and for a new trial, and the cause was taken under advisement upon the presentation made.

It is stipulated by counsel for the parties herein that:

"E. H. Heintze was and remained on duty during the 24-hour period, beginning at the hour of 9 o'clock a. m., January 24, 1914, from 9 o'clock a. m., January 24, 1914, to 1 o'clock a. m. on January 25, 1914, a period of 16 hours, as a telegraph operator and employé at said station of Troutdale; that said office and station is a continuously operated day and night office or station of said defendant; and that the said E. H. Heintze during said time engaged in the handling of orders pertaining to and affecting the move-

ment of trains engaged in interstate commerce by the use of the telegraph, and that prior to the said 24th day of January, 1914, and before he had performed any service in excess of 9 hours in any 24-hour period, the said Heintze was given by defendant's superintendent, through the agency of its chief dispatcher, a definite period or number of hours within which to work, and which was not in excess of 9 hours in any 24-hour period, and that the said Heintze remained on duty as such telegraph operator at said station longer than 9 hours in said 24-hour period, in violation of his said instructions, and without the actual knowledge of any person in said defendant's employ other than said Heintze."

The question presented is whether the defendant railroad company is liable as for an infraction of the act of Congress of March 4, 1907, commonly known as the Hours of Service Act. The act provides (section 2 ) "that it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty for a longer period than" certain specified hours, namely, as applied to telegraph operators, 9 consecutive hours in a period of 24 hours. · Section 3 provides "that any such common carrier, or any officer or agent thereof, requiring or permitting any employé to go, be, or remain on duty in violation" of the act, shall be liable to a penalty, prescribing the same. And it is further declared by the same section that "in all prosecutions under this act the common carrier shall be deemed to have had knowledge of all acts of all its officers and agents."

That the operator remained on duty longer than it is contemplated he should under the Hours of Service Act is specifically conceded, but the defense is that he so remained on duty of his own volition, and contrary to the instructions of his superiors, and without the actual knowledge of any person in the defendant's employ other than himself.

The position of counsel, as concretely stated by their brief, is as follows:

"The defendant is not contending that the questions are to be decided for reasons of convenience to the carrier; neither does it contend that the duty prescribed by the Hours of Service Act is not absolute; but we do contend that the absolute duty prescribed by the act does not include a liability arising out of the mere fact of over-service, either voluntarily rendered or maliciously rendered, or performed under any other circumstance and condition where actual knowledge of its rendition is not possessed by some other officer, agent, or employé."

In arriving at this conclusion, counsel insist that the act makes a distinction between officers and agents of the carrier on the one hand and employés on the other, and that the knowledge imputed to the carrier by the third section is only the knowledge of its officers and agents, and not of its employés.

It is hardly conceivable how the duty enjoined can be absolute, as conceded by counsel, and yet that the carrier will be relieved for want of actual knowledge on the part of its officers and agents. It would seem that counsel concede too much. But this aside.

It is at once apparent that the act makes all officers and agents in appointive authority, or with supervision as to the time of service, as well as the carrier itself, amenable to its provisions, as it declares that

"any officer or agent thereof, requiring or permitting any employé to * * * remain on duty," etc., shall be liable to the penalty prescribed. It may very well happen that an officer or agent may have appointive power or authority, or have delegated supervision as to the hours of service, who may himself be an employé whose time of service is regulated by the act. For instance, we may suppose that a train dispatcher is authorized to appoint and fix the time of service of telegraph operators. In such a case the train dispatcher would be amenable to the law for permitting the operator to remain on duty overtime, and yet some other superior officer would be amenable for permitting the train dispatcher himself to remain on duty overtime. While the supposed case is probably not the fact, yet it affords a demonstration that the act, by intendment, was not designed to distinguish between officers and agents on the one hand and employés on the other, for it prescribes that the term " 'employés' * * * shall be held to mean persons actually engaged in or connected with the movement of any train"—a special, but very broad, signification.

But the imputed knowledge is "of all acts of all its officers and agents." The term "agents," it would seem, is here used in its broadest sense, because it comprises all agents.

"Agency, in its broadest sense, includes every relation in which one person acts for or represents another by his authority." 31 Cyc. 1189.

And again the learned author of the article entitled "Principal and Agent," in the same work, says:

"The relation of principal and agent and master and servant are frequently confused. In general the principles governing the rights, duties, and liabilities growing out of the two relations are the same, and to determine whether a given relation is one of agency or of service is of no consequence. This results from the fact that the law of principal and agent is an outgrowth and expansion of the law of master and servant." 31 Cyc. 1191.

It would therefore seem to follow that knowledge by the employé, in whatsoever capacity engaged, if connected with the movement of any train, under the act is tantamount to knowledge of the carrier, and this even if it be the knowledge only of the employé remaining on duty overtime.

But I am not disposed to rest the case on this reasoning alone. The act is so nearly analogous in the respect under consideration to the Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [Comp. St. 1913, §§ 8605–8612]) as to make an authoritative construction of the latter act decisive of the former. The language of the second section of the latter act is that "it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact"—language of identical import with that used in the statute under consideration.

The Supreme Court of the United States had before it, in St. Louis & Iron Mountain Ry. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061, the question of the liability of a railroad company not equipping its cars with drawbars of the standard height above the rails, .

as required by section 5 of the act, and the court held, speaking through Mr. Justice Moody, that:

"The obvious purpose of the Legislature was to supplant the qualified duty of the common law with an absolute duty, deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it."

Thus it rejected the defense sought to be interposed that the company had exercised reasonable care to keep the drawbars at a standard height, as not relevant under the statute. The result was to impose upon the carrier an absolute duty to keep its cars equipped as required by the act, and especially by the particular section 5.

The appropriate construction of the act came again before the court in C., B. & Q. Ry. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582, which arose under section 2 thereof. The precise question considered is stated by the court as follows:

"Does the act of Congress in question impose on an interstate carrier an absolute duty to see to it that no car is hauled or permitted to be hauled or used on its line unless it be equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars?"

It was insisted that the question was not involved by the Taylor Case, and therefore not decided. But the court held that it was not only so involved, but that the question was properly decided. See, also, Delk v. St. Louis & San Francisco R. R., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590, a companion case, decided at the same time.

So that, as it pertains to section 2 of the act, as well as the entire act, it has become the settled construction of the Supreme Court that there is thereby imposed upon the railroad company an absolute duty, and the penalty prescribed cannot be escaped by the exercise of reasonable diligence. Without else, considering the similarity of the language of the two acts, and the purpose designed to be subserved by each, which is the protection of the public, as well as the protection and relief of employés, these cases would seem to be decisive of the present.

The primary significance of the word "permit" implies knowledge of the thing suffered or allowed to be done; but, as if to allay all question as to its appropriate meaning and application under the present statute, it is specifically declared that the carrier shall be deemed to have had knowledge of all the acts of all its officers and agents, thus rendering the statute in question much more explicit touching what was intended than the safety appliance statute.

I conclude, therefore, that the duty imposed by the act is absolute, and that reasonable care or want of knowledge on the part of the officers and agents of the carrier constitutes no defense to a charge of requiring or permitting an employé to be or remain on duty overtime. Judge Rudkin, of the Eastern District of Washington, has held to the same purpose. United States v. Oregon-Washington R. & Nav. Co. (D. C.) 213 Fed. 688.

Motion denied.