UNITED STATES v. OREGON SHORT LINE R. CO.

(District Court, D. Idaho, E. D.   October 23, 1915.)

**1. MASTER AND SERVANT** &#x6bad;13—HOURS OF SERVICE—VIOLATIONS—"PERMIT."

Hours of Service Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (Comp. St. 1913, § 8678) makes a carrier liable for a penalty if it requires or permits telegraph operators to remain on duty more than 9 hours. Section 3 provides that the carrier is deemed to have had knowledge of all acts of all its officers and agents. *Held*, that a carrier was liable where a telegraph operator remained on duty more than 9 hours, though he did so in violation of the company's rules, and without the knowledge of any of its officers or agents other than himself, as the statute enlarges or extends the application of the general rule under which a corporation is chargeable with the knowledge of only certain classes of officers and agents, and the knowledge which comes to it through an inferior agent is of the same quality as that coming through one having general authority, and to construe "permit" as requiring, not only knowledge, but permission in fact, and to hold that such permission in fact cannot be predicated upon imputed knowledge would render section 3 ineffective (citing Words and Phrases, Permit).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. &#x6bad;13.]

**2. MASTER AND SERVANT** &#x6bad;13—HOURS OF SERVICE—VIOLATIONS—"CONTINUOUSLY OPERATED OFFICE."

On April 19th a railway company issued an order that, commencing with the 20th, a telegraph office at which V. had been the sole operator, and which had been kept open only part of the day, should be continuously operated. An additional operator arranged for failed to appear, and the order was suspended until the evening of the 20th. V. on the 20th was on duty for the number of hours he had been accustomed to work; but, the services of an additional operator having been secured, the office was in fact kept open continuously on that day. *Held*, that the office was not, at the time of V.'s service, a "continuously operated office," within the Hours of Service Act, limiting the hours of service at such offices to 9, but permitting 13 hours of service at offices not continuously operated.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. &#x6bad;13.

For other definitions, see Words and Phrases, Second Series, Continuously Operated.]

Action for penalties by the United States against the Oregon Short Line Railroad Company. On motion for judgment on the pleadings. Motion granted as to four of the counts, and denied and complaint dismissed as to the fifth count.

John R. Smead, Asst. U. S. Dist. Atty., of Boise City, Idaho.

George H. Smith, of Salt Lake City, Utah, and H. B. Thompson, of Pocatello, Idaho, for defendant.

DIETRICH, District Judge. This is an action to recover from the defendant penalties for five different alleged violations of what is commonly known as the "Hours of Service Act" (34 Stat. 1415). Upon the coming in of the defendant's answer to the complaint, the plaintiff moved for judgment on the pleadings, and by agreement between counsel the cause has been finally submitted upon the questions of

law thus raised. There are five counts in the complaint, the first four of which are in legal aspect identical; a distinct question is presented by the answer to the fifth.

[1] As to each of the first four counts the defendant admits that its employé, A. R. Weston, a telegraph operator in its station at Shelley, Idaho, remained on duty 9 hours in the 24 as operator, and thereafter 3 additional hours performing clerical work. It also concedes that the fact that the overtime was given to clerical work is not controlling, but it further alleges that this extra service was in violation of the defendant's general rules, and was without the knowledge of any of its officers or agents other than Weston himself; and this want of actual knowledge is the defense, and the only defense, relied upon.

A carrier is liable if, in the language of the act, it "requires or permits" an employé to remain on duty more than 9 hours; and under section 3 it is "deemed to have had knowledge of all acts of all its officers and agents." The precise point urged by the defendant is that, not having actual knowledge that Weston was working overtime, it cannot be held to have "permitted" the unlawful act, for the term "permit" necessarily implies both knowledge and consent. Gregory v. United States, 10 Fed. Cas. 1195, 1197; In re Wilmington (D. C.) 120 Fed. 180, 184; Wilson v. State, 19 Ind. App. 389, 46 N. E. 1050, 1051; People v. Conness, 150 Cal. 114, 88 Pac. 821, 824; Words and Phrases, vol. 6, p. 5317. The difficulty with the argument is that if it is given place, section 3 of the act is rendered wholly ineffective, for if the knowledge thus imputed cannot, when considered in connection with inaction on the part of the carrier, be made the basis for an inference of permission or consent, it can serve no useful purpose at all. If not only knowledge, but permission in fact, must be proved, and if, as contended, permission in fact cannot be predicated upon the imputed knowledge, it necessarily follows that actual knowledge must always be affirmatively established as any other material fact. In the argument the knowledge referred to in section 3 was assumed to be constructive only, but it is to be noted that it is not so designated in the act. The declaration is that the carrier shall be "deemed to have had knowledge"—not constructive knowledge. A corporation can, of course, acquire knowledge only through its officers and agents. Under the rules of general law it is chargeable with the knowledge, not of all of its officers and agents, but of only certain classes thereof. But, within the scope of the rule, actual notice to the officer or agent is deemed to be actual notice to the corporation.

It is thought that the statute here simply operates to enlarge the application of the general rule beyond those certain classes to which it is now confined by extending it to all officers and agents, and therefore the knowledge which comes to the corporation through an inferior agent is of the same quality as that which comes through one having general authority; in both cases the notice is deemed to be actual and not merely constructive. I am unable to yield to the suggestion that the only effect of section 3 is to cast upon the carrier the burden of showing that it was without knowledge. The language is inapt to express such a purpose. The declaration is absolute and unqualified:

"In all prosecutions * * * the common carrier shall be deemed to have had knowledge," etc.

The statute identifies the carrier with all of its agents, inferior as well as superior, and to it is imputed the knowledge of any one of them. It once appearing that some officer or agent had knowledge, it becomes quite immaterial to show that other officers or agents were without such knowledge. It is doubtless true that, so interpreted, the act is rigorous, and may now and then operate harshly upon the carrier; but, upon the other hand, it is apparent that under the view urged by the defendant it would be a much less efficient means for accomplishing the manifest purpose for which it was designed. From the discussion it follows that the answer states no defense to the first four causes of action, and as to them the motion for judgment must be allowed. It should be added that, while the reasoning may in some respects be distinct, the conclusion is fully supported by O. W. R. & N. Ry. Co. v. United States (D. C.) 213 Fed. 688, and is, to say the least, not out of harmony with the views expressed by the Circuit Court of Appeals in its opinion of affirmance in that case. 223 Fed. 596, —— C. C. A. ——.

[2] The controlling question touching the fifth cause of action is whether or not the defendant's telegraph office or station at Dayton, Idaho, was, during the whole of the 20th day of April, 1915, "continuously operated," as contemplated by the provisions of the act. The operator, Vissing, was on duty more than 9, but less than 13, hours, and, if it was not a "continuously operated" office, no wrong was done. It appears that prior to April 20th Vissing had been the sole operator, and the office was kept open only part of the time; but on April 19th the defendant issued an order that, commencing with the 20th, the office should be continuously operated, and arranged for an additional operator. But upon the morning of the 19th the new operator having failed to appear, the order of the preceding day was suspended until the evening of the 20th, when the services of an additional operator were secured. Vissing was on duty for the number of hours he had been accustomed to work, and as a matter of fact the office was kept open continuously on the 20th. But I am inclined to think that what was done was obnoxious to neither the letter nor the spirit of the act. Suppose that, the other facts being the same, the company had not decided to change to a "continuously operated" office until the hour of 7:40 p. m., on April 20th, the time when the additional operator appeared. We would have a case where the office was in fact operated continuously on April 20th, but in law it did not become such until 7:40 p. m., and surely the decision at that hour to change the character of the office could not be given the retroactive effect of making unlawful the service of Vissing, which at the time it was rendered was entirely within the terms of the statute. In principle and legal aspect the supposed case is indistinguishable from that made by the answer.

Accordingly, as to the fifth count, the motion will be denied, and the complaint dismissed.