MINNEAPOLIS, ST. P. & S. S. M. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 21, 1917.)

No. 4712.

MASTER AND SERVANT &#x22B3;13—HOURS OF SERVICE—"PERMIT."

Hours of Service Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (Comp. St. 1913, § 8678), declares that it shall be unlawful for any common carrier, its officers or agents, subject to the act, to require or permit any employé subject to the act to be or remain on duty for a longer period than 16 consecutive hours, while section 3 (Comp. St. 1913, § 8679) provides that in all prosecutions under this act the common carrier shall be deemed to

&#x22B3;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

have had knowledge of all the acts of its officers and agents. The legislative history of the act showed that Congress defeated proposed amendments to insert the word "knowingly" before "permit," and in the provision that the common carrier should be deemed to have knowledge of all the acts of its officers and agents inserted the words "officers and" in lieu of the words "duly authorized," which on the first draft preceded "agents." An engineer and fireman whose train had broken in two and who took the first part of the train into a station, from whence another engineer and fireman with another engine were sent to bring in the remaining part of the train, delayed for several hours in placing their engine in the roundhouse and going off duty, although their duties were at an end and the rules of the railroad company required them to see that they did not exceed the hours of service prescribed. Had such engineer and fireman promptly placed their engine in the roundhouse and gone off duty, they would not have been on duty more than 16 hours. *Held* that, in view of the history of the passage of the act and the fact that the railroad company was charged with the knowledge of the engineer and fireman who neglected to place their engine in the roundhouse and go off duty, the railroad company must be deemed to have violated the Hours of Service Act by permitting such employés to remain on duty beyond the time prescribed; the word "permit," while ordinarily implying knowledge and consent, being also synonymous with "suffer" or "allow" (citing Words and Phrases, First and Second Series, Permit).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14.]

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action by the United States of America against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Alfred H. Bright, of Minneapolis, Minn., for plaintiff in error.

Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C. (Alfred Jaques, U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. This action was brought by the United States against the plaintiff in error for an alleged violation of the hours of service act (34 Stats. 1415). It was alleged in the two counts of the complaint that the company was engaged in interstate commerce and permitted its engineer J. L. Gasow, and its fireman S. Steen, each to be and remain on duty from 6 o'clock p. m. of February 2, 1915, to 11 o'clock a. m. on February 3, 1915. The company made answer that said engineer and fireman went to work at Thief River Falls at 6 p. m. on February 2d; that an accident happened about four miles out of Glenwood by which the train they were pulling was so broken in two that it could not be recoupled; the engineer and fireman and the rest of the crew took the head end of the train on to Glenwood, arriving there at 9 a. m. of February 3d, having been on duty 15 hours; that another engineer and fireman went with another engine to bring in the remaining part of the train; that said engineer, Gasow, and fireman, Steen, had no other duty to perform and in fact performed none and were at liberty at the hour of 9 o'clock to place the engine in the roundhouse and go off duty; in-

stead of doing this, they carelessly, and of their own volition, exceeded the hours of service, not putting up the engine until 11 o'clock; that under the rules and regulations of the defendant company said engineer and fireman were bound to see to it that they did not exceed the hours of service under conditions within their control, and that said defendant had recently enforced said rule by suspending an engineer and fireman for similar acts; that under the rule aforesaid said engineer and fireman were required to notify the train dispatcher of the near expiration of the 16-hour period, which in this case the said Gasow and Steen failed to do; that had they made a report to the train dispatcher as they were required to do they would have been given directions to roundhouse their engine and go off duty, which they should have done without any orders. The United States moved for judgment on the pleadings. This motion was sustained, and judgment was rendered for the government and two penalties of $50 each were imposed, and the railroad company sued out a writ of error.

The sole question is: Did the company set up a defense in its answer?

Of course, the answer pleaded the matters by way of defense and not in mitigation of damages; but, as the court only imposed a penalty of $50 where under the statute it might lawfully have imposed one of $500, it doubtless considered the matter set up in the answer in mitigation. The statute in question provides:

"Sec. 2. That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty for a longer period than sixteen consecutive hours." 34 Stats. 1416.

It is strenuously insisted that under the circumstances shown in the answer the company neither required nor permitted the work by the engineer and fireman beyond 16 hours. It may be conceded that it did not require such service, and the only question is: Did it permit it in the meaning of this act?

The word "permit" ordinarily implies knowledge and consent. Words and Phrases, vol. 6, p. 5317; Second Series, Id. 972. But this rule is not without its exceptions. After giving numerous definitions, Webster's New International Dictionary defines the term "permit" to be synonymous with "suffer," "allow." The term "permit" has often been used as synonymous with "suffer," so that·it may be said that one who suffers the doing of a thing which he might have prevented permits it. Conner v. Fogg, 75 N. J. Law, 245, 67 Atl. 338. It therefore becomes important to consider the legislative record of the passage of this bill for the purpose of ascertaining, if possible, what Congress meant by the use of the word "permit."

It shows that on March 15, 1906, Sen. La Follette introduced in the Senate the bill which, as subsequently amended, became chapter 2939 of the Acts of the Fifty-Ninth Congress. On the same day the bill was referred to the Committee on Education and Labor. On June 9, 1906, Sen. Dolliver reported the bill from the Committee on Education and Labor with an amendment in the nature of a substitute. On June 26, 1906, the bill was taken up for debate in the Sen-

ate and continued to be debated periodically for five days, when by unanimous consent it went over to January 10, 1907. On that day the bill was further debated. The substitute contained the language substantially of the present law:

"That it shall be unlawful for any common carrier * * * to require or permit any employé * * * to remain on duty more than sixteen consecutive hours."

Sen. Brandegee offered a substitute which in section 2 provided for the punishment of any such common carrier knowingly violating the provisions of the act.

This was voted down, 45 to 23. Sen. La Follette then offered a substitute for the committee substitute which provided:

"That it shall be unlawful for * * * any common carrier engaged in interstate or foreign commerce by railroad, or any of its officers or agents, to require or permit any employé engaged in or connected with the movement of any train carrying interstate or foreign freight or passengers to remain on duty more than sixteen consecutive hours."

This substitute was agreed to 36 to 32, and the bill then passed 70 to 1. The bill as thus passed did not contain the provision now in the third section of the act that, "In all prosecutions under this act the common carrier shall be deemed to have had knowledge of all acts of all its officers and agents," nor any similar provision. The bill reached the House on January 11th and was referred to the Committee on Interstate and Foreign Commerce. On February 16, 1907, Mr. Esch, who had a similar bill of his own pending which had been favorably reported by the committee, reported the bill back from the Committee on Interstate and Foreign Commerce recommending a substitute. This substitute provided in section 2:

"That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or *knowingly* permit any employé subject to this act, to be or remain on duty for a longer period than sixteen consecutive hours."

In the third section this substitute provided for a recovery of not to exceed $500 for each violation from any common carrier requiring or *knowingly* permitting any employé to go, be, or remain on duty in violation of the second section. Having thus expressly provided that the carrier's permission must be with knowledge, it then provided in section 3:

"In all prosecutions under this act the common carrier shall be deemed to have had *knowledge* of all acts of its *duly authorized* agents."

There was no provision of the substitute expressly requiring knowledge except in the two instances italicized. On February 18, 1907, a motion was made to suspend the rules and pass this substitute. The writer voted for that motion, but it was defeated.

On February 23, 1907, the Committee on Rules of the House reported a resolution that the amendment in the nature of a substitute reported by the Committee on Interstate and Foreign Commerce be agreed to with certain amendments. The first of these amendments struck out the word "knowingly" in both places where it appeared as modifying

the word "permit." This was agreed to by a vote of 281 to nothing, and the bill then went to conference. The Senate conferees filed their report on March 1, 1907, to strike from the sentence "in all prosecutions under this act the common carrier shall be deemed to have had knowledge of all acts of its duly authorized agents" the words "duly authorized," and insert in lieu thereof the words "officers and." It is true this first report of the conferees was rejected, but solely upon some changes made in the House provision as to telegraphers which have not been referred to because not material here. Subsequently, the conferees agreed upon a report identical with their former report, except as to telegraphers, and their report was agreed to by both houses.

In view of this history of the defeat of the Brandegee substitute in the Senate which required knowledge to make the company liable and the defeat of the substitute of the Committee on Interstate and Foreign Commerce upon the same ground in the House, we should ordinarily have no hesitancy in saying that the word "knowingly" was not implied from the use of the word "permit," as it has meanings which do not imply knowledge and that would end this controversy; but what of the provision that the common carrier shall be deemed to have had knowledge of all acts of all of its officers and agents? As this was doubtless inserted in its original form on account of the introduction of the word "knowingly," we would conclude that it was left in through inadvertence but for the fact that it was amended in conference after the word "knowingly" had been struck out. When we come to examine, however, the amendment made in conference, the question of whether knowledge is essential or not becomes immaterial. When the language was used "in all prosecutions under this act the common carrier shall be deemed to have had knowledge of all acts of its duly authorized agents," and the words "duly authorized" were stricken out and the words "officers and" inserted, so that the statute as enacted reads that the "common carrier shall be deemed to have had knowledge of all acts of all its officers and agents" whether they were authorized to act in the matter under consideration or not, we see no reason why the court can place any restriction on the class of agents and exclude employés therefrom. The engineer and fireman each knew that both were exceeding the authorized hours, and this knowledge of theirs was by the clear language of the statute notice to the company.

This was held, not only by the District Court in this case, but by the District Court of Oregon in United States v. Oregon-Washington R. & Nav. Co. (D. C.) 218 Fed. 925, the District Court of Idaho in United States v. Oregon Short Line R. Co. (D. C.) 228 Fed. 561; and by the Court of Appeals of the Ninth Circuit in the last-named case in Oregon Short Line R. Co. v. United States, 234 Fed. 584, 148 C. C. A. 350.

An interesting and quite exhaustive opinion on the subject of when a party may be held guilty even in the absence of knowledge upon his part that the act in question was illegal is Feeley v. United States, 236 Fed. 903, —— C. C. A. ——.

This case is not as if the word "knowingly" had always been omitted from the statute, but the solemn act of Congress in striking out the

word "knowingly" aids in the interpretation and construction of the word "permit."

It was undoubtedly the duty of the engineer and fireman to deliver the engine at the roundhouse. It is claimed that they loitered after they reached the same town where the roundhouse was situated, how far from the roundhouse is not alleged, but there can be no distinction drawn between the points at which employés loiter. If this loitering was 10 miles or 15 miles from the roundhouse, no one would think of claiming that the time should be deducted, and it can make no difference whether it was 10 miles or but a few blocks from the roundhouse. It is not claimed that the engineer and fireman had any right to abandon the engine at any place but at the roundhouse, and the fact that they loitered before getting the engine to the roundhouse will not avail the defendant. If every case is to be made to turn upon the question as to whether the employés could with reasonable diligence have reached the end of their route within the 16 hours, the whole law becomes a dead letter. That these two men served over 16 hours is beyond dispute. That this in the contemplation of Congress unfitted them for work the next day is also beyond dispute, and this statute cannot lawfully be converted into a mere law providing that in the absence of diligence upon the part of the employés the company shall not be liable.

The court was right in its conclusion, and its judgment is affirmed.

HOOK, Circuit Judge, concurs in the result.