## UNIVERSAL OIL PRODUCTS COMPANY v. THE VICKERS PETROLEUM COMPANY OF DELAWARE.

(*April* 4, 1941.)

LAYTON, C. J., and TERRY, J., sitting.

*David F. Anderson* (of Southerland, Berl, Potter and Leahy) for plaintiff (Roswell L. Gilpatric and Robert M. Diggs, of New York City, of counsel).

*Logan and Duffy* for defendant.

Superior Court for New Castle County, January Term, 1940.

LAYTON, Chief Justice:

The plaintiff, owner of certain patents for the cracking of oil, on the 1st day of June, 1934, granted a nonexclusive license to use the patents to the defendant; and it has sued in covenant to recover unpaid royalties accrued during the period from March 1, 1936 to March 31, 1940.

The license agreement contained this provision: "Universal agrees that in the event that Universal shall enter into any license agreement, or shall modify any existing license agreement, covering operations in the United States providing for a lower or more advantageous royalty rate, then and thereafter Licensee shall, under substantially similar conditions, have the benefit of such lower or more advantageous royalty rate".

To the declaration the defendant filed, inter alia, two special pleas which are challenged by demurrer.

The tenth plea alleged a breach of the agreement by the plaintiff in that it entered into license agreements covering operations in the United States with certain named corporations, competitors of the defendant, which corporations, from June 2, 1934 to January, 1940, had been in-

fringers of certain of the patents set forth in the agreement; and that the infringers had not been obliged to pay anything, nor had they paid anything, to the plantiff for the use of the patents during the period.

The eleventh plea alleged that the plaintiff had breached the agreement during the entire period of time by allowing direct competitors of the defendant (naming them) to use the letters patent set forth in the agreement without the payment of royalty during the period.

The defense to the action suggested by these pleas is that the plaintiff had impliedly licensed competitors to use the letters patent to the defendant's damage; wherefore, the defendant was relieved from its obligation to pay the stipulated royalties.

With respect to the defense set up by the eleventh plea, the defendant's contention at the oral argument seemed to be that the plaintiff had breached the agreement in that it was under a duty as licensor, and had failed, to protect the defendant, its licensee, against infringers of the patents. But this contention may be disposed of by pointing out that the agreement contained no such protective covenant, and the established principle is, that in the absence of express agreement, there is no implied covenant in a grant of a license that the licensor shall protect the licensee against competition from infringers. *McKay v. Smith,* (*C. C.*) 39 *F.* 556; *Sea Gull Specialty Co. v. Humphrey,* (5 *Cir.*) 242 *F.* 271; *Lathrop v. Rice & Adams Corp.,* (*D. C.*) 17 *F. Supp.* 622; *Frost Ry. Supply Co. v. T. H. Symington & Son, Inc.,* (*D. C.*) 24 *F. Supp.* 20.

The contention now is that the plaintiff, "by allowing" competitiors of the defendant to use the letters patent without payment of royalty, by implication granted licenses to

them, and, under the "most favored licensee" provision of the agreement, the defendant is relieved from its obligation to pay the royalties stipulated.

It is to be presumed that the defendant has stated its case in a manner most favorable to itself. *Snavely v. Booth et al.*, 6 *W. W. Harr.* (36 *Del.*) 378, 176 *A.* 649; and as the plea is devoid of specific factual averment, the question presented concerns the proper significance to be ascribed to the word "allowing". The verb "allow" is one of varying shades of meaning. It may have the meaning of grant, concede, grant license to, or permit; but "allow" is less formal than "permit," and may imply little more than forbearance of prohibition. Certainly the word is less positive than "permit"; it is more synonymous with "suffer". *Wilson v. State*, 19 *Ind. App.* 389, 46 *N. E.* 1050. No inferences are to be drawn in favor of the pleader, and as the word "allowing" is used in the plea, we think mere inaction is indicated. The question then is whether the plaintiff has impliedly licensed competitors of the defendant to use the letters patent without obligation for the payment of royalty by its mere failure to proceed against them for infringement.

A license may be express or implied. An express license may be conferred by written instrument or by parol. *Robinson on Patents*, § 809. An implied license may result from circumstances which operate as an estoppel on the owner of the patent to prevent him from denying the rights claimed by the apparent licensee; and any conduct by which the owner induces the person who employs the invention to place himself in a situation where he must suffer injury unless his right to practice the invention is conceded, will be regarded as implying such a right and as estopping the owner of the patent from asserting a prohibition. *Id.*, § 834.

██ ██ The defendant cites cases holding that an implied license may result from the application of the doctrine of acquiescence or estoppel, *Luten v. Bearce,* (*D. C.*) 219 *F.* 237; *DeForest Radio T. & T. Co. v. Radio Corporation of America,* (*D. C.*) 9 *F.* 2d 150; *St. Joseph Iron Works v. Farmers Mfg. Co.,* (4 *Cir.*) 106 *F.* 2d 294; *De Forest Radio T. & T. Co. v. United States,* 273 *U. S.* 236, 47 *S. Ct.* 366, 71 *L. Ed.* 625; and it seemingly attributes to the word "acquiesce" as used in those cases the significance of mere inaction. But even a casual reading of the cases will reveal that the licensor in the several situations disclosed was not merely inactive. In each of the cases cited the conduct of the licensor was active and positive, not passive and negative, that is to say, the conduct was such as would reasonably induce the user to believe that the owner of the patent had consented to his use of it. No case has been cited, nor have we found one, which holds that mere inaction, without more, amounts to acquiescence. We do not understand *Lathrop v. Rice & Adams Corporation, supra,* as announcing such a broad principle notwithstanding that such inference might be drawn from certain of the language employed. We are quite convinced that the word "allowing" is not, of itself, a sufficient basis for the deduction of the equitable doctrine of acquiescence. If the facts and circumstances are such as to indicate acquiescence, estoppel or ratification, they should be alleged. The plea avers a conclusion of fact, a fault in pleading pointed out in sustaining a demurrer to other pleas filed by the defendant in this action. See 2 *Terry* (41 *Del.*) 143, 16 *A.* 2d 795.

██ The tenth plea offers no defense. The argument advanced in support is equivocal. The defendant does not, in terms, deny the general rule to be that a licensor is under no implied obligation to prevent infringers from using the patents licensed; and it admits that the situation presented

by the plea with respect to the alleged infringers is not greatly different from that disclosed by the eleventh plea; because it says, the plaintiff, in granting the infringers a license without requiring them to pay for the use already made by them of the patents, in effect granted to them a retrospective implied license without requirement for the payment of royalty. Hence, it is argued, the defendant was and is relieved from its duty to pay royalties. It is somewhat difficult to understand what is meant by a "retroactive implied license". A license in its very nature is prospective in operation. The principle that a licensor is under no implied duty to proceed against infringers would have little meaning when applied to a license agreement containing a "most favored licensee" provision if, in licensing an infringer without requiring payment for infringing use, a license for that use is to be implied. Acceptance of the argument would mean that the plaintiff, if it should proceed to offer protection to the defendant against competition from infringers by licensing them on equal terms with the defendant, would be compelled to exact payment for the infringer's past operations at the same royalty rate, or else forfeit its right to collect from the defendant the royalties accrued during the period of infringement.

The most favored licensee provision of the license agreement speaks in terms of the future. Specifically it provides that, if Universal shall enter into any license agreement, or shall modify any existing license agreement providing for a lower or more advantageous royalty rate, then and thereafter the licensee shall have the same benefit. There is nothing in this language which reasonably can be construed as meaning that if the licensor should fail to proceed against infringers the licensee would be relieved of all liability for the payment of the stipulated royalties. *Raytheon Mfg. Co. v. Radio Corporation of America, 286 Mass.*

84, 190 *N. E.* 1, is opposite. There licensees of the defendant, threatened with forfeiture of their licenses, sued to enforce the most favored licensee provision of the license agreement and to determine the amount of royalties due. In certain anti-trust actions brought by a number of other companies against the defendant settlements were made including the release of all claims against the companies for past infringement and the granting of licenses to them at a royalty rate lower than that enjoyed by the plaintiffs. The plaintiffs claimed not only the benefit of the lower royalty rate to which they became entitled under the license agreement, but also a zero rate for the period of infringement covered by the releases. It was held that the plaintiffs were entitled to the lower royalty rate; but the Court rejected the contention that they were entitled to the free use of the patents for the prior period, saying that a release for damages accrued did not come within the scope of the most favored licensee provision, and that a release for wrongs done in the past was not the equivalent of a license to do rightfully the same thing in the future.

With respect to this case, the defendant attempts a distinction. It points out that the most favored licensee provision was concerned with a lower royalty rate merely, not, as here, with a lower or more advantageous royalty rate. We see no essential difference in the two provisions. The error in the defendant's argument is that it ignores, or attempts to circumvent, the principle, that in license agreements of the kind before the Court, there is no implied covenant that the licensor shall afford protection against infringement by others.

The demurrer is sustained.