The **PLASTIC CONTACT LENS COMPANY**, Plaintiff,

v.

**GUARANTEED CONTACT LENSES, INC., Dr. Leonard Seidner, doing business as Quality Optical Company of New York, Dr. Leonard Seidner and Joseph Seidner, Individually and doing business as Quality Optical Company of New York, John Doe, Richard Roe, Doe Corporation, Inc., and Roe Corporation, Inc., Defendants.**

No. 63 Civ. 388.

United States District Court
S. D. New York.

Feb. 20, 1968.

See also D.C., 35 F.R.D. 35.

Karpatkin, Ohrenstein & Karpatkin, Marvin M. Karpatkin, New York City, for plaintiff.

Jack Smolen, Flushing, N. Y., for defendants.

CANNELLA, District Judge.

Action to recover royalties under a patent licensing contract. Verdict for the plaintiff. Defendants' counterclaim is dismissed.

### JURISDICTION

The court finds:

That the requisite jurisdictional monetary requirement is satisfactory and that the court has jurisdiction under Section 1332 of Title 28 of the United States Code.

The court finds:

That the plaintiff, The Plastic Contact Lens Co., hereinafter Plastic, is an Illinois corporation with its principal place of business outside of the State of New York and that the defendants Guaranteed Contact Lenses, Inc., hereinafter Guaranteed, and Quality Optical Company of New York, hereinafter Quality, are New York corporations with their principal place of business in New York.

The only evidence presented to the court was documentary. It establishes that prior to January 1, 1961, the effective date of the defendants' licenses

and up until April 12, 1961, Solex Laboratories, Inc., hereinafter Solex, was the owner of the Touhy Patent, United States Patent No. 2,510,438 for corneal contact lenses.

On January 12, 1961, pursuant to an agreement signed by the licensee on January 5, 1961 and by the licensor on January 12, 1961, Solex granted a nonexclusive license to the defendant Guaranteed to manufacture plastic lenses under the Touhy Patent. The effective date of the license was made retroactive to January 1, 1961. A similar license was granted by Solex to the defendant Quality on February 25, 1961 pursuant to an agreement signed by the licensee on February 19, 1961 and by the licensor on February 25, 1961. The effective date of this license was also made retroactive to January 1, 1961.

Subsequently, on or about April 12, 1961, Solex assigned to the plaintiff, Plastic, all of its right, title and interest in and to the Touhy Patent, including its rights as licensor under certain non-exclusive patent license aggrements.

In this action for the non-payment of royalties, the plaintiff, assignee of Solex, alleges that the defendants have failed to comply with their obligations under their licenses, in that although they have continued to manufacture lenses under the Touhy Patent, the defendant Guaranteed has failed to make any accountings or pay any royalties since August, 1961 and the defendant Quality has failed to make any accountings or pay any royalties since November, 1962.[1]

The defendants admit that they ceased making accountings and paying royalties as of the above stated dates, but they allege as affirmative defenses that the plaintiff has breached the "most favored licensee" provisions of their licenses in that it or its assignor granted licenses containing more favorable terms than theirs to the Security Contact Lens Corporation, hereinafter Security License, and to Geo. H. Butterfield & Son, hereinafter Butterfield License, without offering such terms to the defendants. Further, the defendants, as counterclaimants, seek to acquire in their licenses the terms of the Security and Butterfield Licenses, which they allege to be more favorable than their own.[2]

It is a well settled principle of contract law that a breach by a licensor is not a defense in a suit for non-payment of royalties where the licensee continued to manufacture and sell under the patent. Wilcolator Co. v. Robertshaw Thermostat Co., 26 F.Supp. 255 (W.D.Pa.1939); Rosenthal Paper Co. v. National Folding Box & Paper Co., 226 N.Y. 313, 123 N.E. 766 (1919). Therefore, even assuming arguendo that the Security and Butterfield licenses resulted in the granting of more favorable terms to other licensees, without offering equal terms to the defendants in violation of the "most favored licensee" clause of the defendants' licenses, this would not be a defense to the plaintiff's suit for non-payment of royalties. If the defendants believed that the plaintiff had breached their contracts there were remedies at law available to them and they could have terminated their contracts. However, the defendants did not choose to avail themselves of these remedies and continued to manufacture

---

1. The agreement to pay royalties is contained in § 2 of each of the defendant's licenses. The agreement to make monthly accountings is contained in § 3 of each of the defendant's licenses.

2. The so-called "most favored licensee" provision is contained in § 8 of the defendants' licenses and states: "Solex agrees that in the event it should hereafter grant a license to another person, firm or corporation under said Patent No. 2,510,438, or under any other United States patent or application licensed hereunder upon terms and conditions more favorable than those herein accorded, except for the manner of settlement for past infringement, Solex shall promptly offer Licensee the benefit of such more favorable terms and conditions, which upon acceptance shall be retroactive to the date that such more favorable terms and conditions were accepted by said other person, firm or corporation."

under the protection of their licenses without paying royalties.

The court will now consider the two contracts which the defendants attempted to use as defenses and on which they base their counterclaims.

The first contract relied on by the defendants is the license agreement between Solex and Security which was executed by both parties on December 22, 1960 and had an effective date of January 1, 1961. The defendants allege that the terms of this contract were more favorable than their own and that by granting this license without offering the defendants these more favorable terms, Solex violated the "most favored licensee clause" of their licenses.

The court is unable to accept the defendants' argument. The language in the Guaranteed and Quality licenses is identical and in each the "most favored licensee" clause is contained in Section 8 and clearly states that, "Solex agrees that in the event it should hereafter grant a license to another person, firm or corporation under said Patent No. 2,510,438 * * * upon terms and conditions more favorable * * * except in the manner of settlement for past infringement, Solex shall promptly offer Licensee the benefit of such more favorable terms and conditions * * *." The language of the licenses themselves shows the prospective nature of the clause.

The Security license was granted on December 22, 1960 and became effective on January 1, 1961. The defendants' licenses were granted on January 12, 1961 and February 25, 1961 and were given retroactive effective dates of January 1, 1961. Since the Security license was in effect before the defendants' licenses were executed, it does not come within the purview of clause 8 of the defendants' licenses which provides for a situation where the licensor "* * *

should hereafter grant a license * *." Further, the few cases which have considered the issue, have held that a "most favored licensee clause" has only prospective application [3] and one of the eminent scholars in the field has stated that the purpose behind the clause is to satisfy the licensee's desire "* * * to have the benefit of any relaxation of the terms of his license given to any subsequent licensee." [4]

The court therefore will not consider the terms of the Security license since it finds that it is not within the purview of the "most favored licensee" clause of the defendants' licenses. The court further finds that the failure of the plaintiff or its assignor to offer defendants the terms of the Security license did not result in a breach of the most favored licensee clauses of the defendants' licenses by the plaintiff. The defendants counterclaims based on the Security license are dismissed.

The second license which the defendants allege violated their "most favored licensee" clauses was the license granted by plaintiff to Geo. H. Butterfield & Son pursuant to the settlement agreement of May 7, 1962. The settlement argeement of May 7, 1962 was the termination of countersuits for patent infringement, by George H. Butterfield, Sr. and Geo. H. Butterfield & Son, and Solex. The parties to these countersuits for patent infringement were the owners of the two largest contact lens patents in the United States, the Butterfield and Touhy patents. The settlement agreement of May 7, 1962 terminated these suits and did not disturb the validity of both patents. As part of the consideration for this agreement Solex gave George H. Butterfield, Sr. and Geo. H. Butterfield & Son "* * * a nonexclusive, nontransferable and royalty free right to make, use and sell corneal contact lenses embodying any of

3. Core Laboratories, Inc. v. Hayward-Wolff Research Corp., 11 Terry 565, 50 Del. 565, 136 A.2d 533 (Del.1957); Universal Oil Products Co. v. Vickers Petroleum

Co., 2 Terry 238, 41 Del. 238, 19 A.2d 727 (Del.1941).

4. Ellis, Patent Licenses (Deller 3rd ed. 1958) § 252 p. 294.

the subject matter described and claimed in and by * * * " the Touhy Patent. Solex further gave George H. Butterfield Sr., and Geo. H. Butterfield & Son, the right to grant a royalty free license under the Touhy Patent to four specified licensees[5] so long as they remained licensees under the Butterfield Patent.

The defendants argue that in granting this license to Butterfield and indirectly to the four specified licensees, Solex granted licenses with more favorable terms than theirs and that plaintiff's failure to offer these more favorable terms to the defendants, resulted in a breach of the "most favored licensee" clauses of their licenses. The court, for two reasons, is unable to accept the defendants' argument.

■ First, the uncontradicted evidence clearly proves that on October 25, 1962 the plaintiff sent a letter to its licensees informing them of the terms of the Butterfield Settlement and Butterfield License. The letter further indicated the plaintiff's opinion that the terms of these licenses were not "more favorable" than those of its standard license, but it offered revised terms to any licensee who considered the Butterfield terms "more favorable" and who was in a position to grant the plaintiff consideration equivalent to that received from the Butterfield interests. It invited any licensee who sought to take advantage of this offer to reply promptly. Neither of the defendants ever replied to this offer. The court finds that the plaintiff in making this offer at least technically complied with its obligation under the "most favored licensee" clauses of the defendants' licenses.

Second, even assuming arguendo that this technical compliance with the obligation was not sufficient or that the plaintiff had made no attempt to offer the allegedly more favorable terms to the defendants, the court finds that the plaintiff did not breach the "most favor-

ed licensee" clauses of the defendant's licenses.

■ The "most favored licensee" clauses in the defendant's licenses explicitly contain one exception which covers the situation where a license with more favorable terms is granted as a settlement for past infringement. That is the situation which is actually before this court. The Butterfield License, in question here, was granted by the plaintiff's assignor as a part of the consideration for the settlement of the countersuits for patent infringement. Therefore, the court finds that the Butterfield License comes within the exception contained in the "most favored licensee" clauses of the defendant's licenses and that neither the plaintiff nor its assignor has breached these clauses.

Further, the court finds that since the plaintiff has complied with its obligation under the "most favored licensee" clauses of the defendant's licenses and that even if it had not, the Butterfield License was within the exception to the "most favored licensee" clauses, that there are no grounds for the defendants' counterclaims based on this issue and they are dismissed.

Finally, the court finds that the right given to Butterfield to grant royalty free licenses under the Touhy Patent to four specified Butterfield licensees, as long as they remained Butterfield licensees, was part and parcel of the same settlement agreement and for the reasons stated above, was within the exception to the "most favored licensee" clauses of the defendants' licenses.

Therefore, the court directs each of the defendants to account to the plaintiff for all of the plastic lens devices manufactured and sold by each of them subject to the licenses considered by this court and orders that a judgment be entered against each of them for the sums found due on its accounting.

So ordered.

5. Titmus Optical Co., Inc., Petersburg, Virginia; Rogers Brothers, Beaumont, Texas; Sloan Optical Co., Inc. (now Southern Contact Lens Laboratories, Inc.), Greensboro, North Carolina; Utah Optical Supply Co., Salt Lake City, Utah.