The PLASTIC CONTACT LENS COM-
PANY, Plaintiff,

v.

FRONTIER OF the NORTHEAST, INC.,
Defendant,

Frontier Contact Lenses, Inc., Amended
Defendant,

Allan A. Isen, George F. Sitterle and
William Feinbloom, Supplemental
Defendants.

Civ. No. 10362.

United States District Court,
W. D. New York.

Oct. 29, 1969.

Karpatkin, Ohrenstein & Karpatkin,
New York City (Marvin M. Karpatkin,
New York City, of counsel), Panter,
Nelson & Bernfield, Chicago, Ill. (Irwin
Panter, Chicago, Ill., of counsel), and Ka-
vinoky, Cook, Hepp, Sendler & Gardner,
Buffalo, N.Y. (Charles R. Sandler and
Wayne D. Wisbaum, Buffalo, N.Y., of
counsel), for plaintiff.

Hodgson, Russ, Andrews, Woods &
Goodyear, Buffalo, N.Y. (Victor T. Fu-
zak, Buffalo, N.Y., of counsel), for de-
fendant Frontier Contact Lenses, Inc.,
and supplemental defendants Allan A.
Isen and George F. Sitterle.

Moses Falk, New York City, for sup-
plemental defendant William Feinbloom.

CURTIN, District Judge.

In this action, the plaintiff seeks an
accounting and the payment of royalties
pursuant to a licensing agreement en-
tered into with the defendant. This
case was tried without a jury and the
court has considered the exhibits, testi-
mony and memoranda submitted by the
parties and makes the following findings
of fact and conclusions of law.

Plaintiff, The Plastic Contact Lens Company [hereinafter called "PCL"], is an Illinois corporation engaged in the manufacture and sale of contact lenses and optical equipment.

The defendant [hereinafter "Frontier"], before the beginning of this action, changed its name from "Frontier of the Northeast, Inc." to "Frontier Contact Lenses, Inc." It was a New York corporation engaged in the manufacture and sale of contact lenses. On January 6, 1966, the corporate defendant, Frontier, was dissolved and the liquidating stockholders of the corporation are the supplemental defendants, Allan A. Isen, George F. Sitterle and William Feinbloom, added as defendants by order of Judge John O. Henderson on January 5, 1968.

The license agreement entered into between the parties was effective on January 1, 1961. Up until April 12, 1961, Solex Laboratories, Inc. [hereinafter "Solex"] was the owner of the Tuohy patent, United States Patent No. 2,510,438, for corneal contact lenses, which expired on June 6, 1967. On April 12, 1961, Solex assigned this patent to the plaintiff, PCL, including its rights as licensor under certain non-exclusive patent license agreements including the one with Frontier. This agreement granted to Frontier a non-exclusive license to manufacture, use and sell lenses under the Tuohy patent.

In return for the right to manufacture lenses under the Tuohy patent, Frontier was to make monthly accountings and payments for all corneal plastic lenses manufactured.[1]

Frontier accounted and paid monthly from February, 1961 until October, 1962. After that, no further payments were made but Frontier continued to file monthly accountings until February, 1965.

In October, 1962, Frontier stopped payment when PCL notified Frontier that PCL granted a license in the Tuohy patent to George H. Butterfield and George H. Butterfield & Sons, Inc. [hereinafter "Butterfield"] and other Butterfield licensees as part of a settlement agreement between PCL and Butterfield. Frontier claims that this grant of a license violated Section 8 of the agreement between PCL and Frontier. Section 8 provides:

"SOLEX agrees that in the event it should hereafter grant a license to another person, firm or corporation under said Patent No. 2,510,438, or under any other United States patent or application licensed hereunder upon terms and conditions more favorable than those herein accorded, except for the manner of settlement for past infringement, SOLEX shall promptly offer LICENSEE the benefit of such more favorable terms and conditions, which upon acceptance shall be retroactive to the date that such more favorable terms and conditions were accepted by said other person, firm or corporation."

Frontier claims that the grant of the license to Butterfield was "upon terms

1. LICENSE AGREEMENT.
    "2.

    (a), LICENSEE, solely for the purpose of accounting hereunder, agrees to pay to SOLEX royalties upon such devices consisting of pieces of finished material in which two lens surfaces are applied thereto and which are adapted to be or are made into a finished or unfinished corneal contact lens calculated in accordance with the following schedule on all such devices sold by LICENSEE:
    $1.00 on each pair of the first 150,000 pairs of devices or $.50 per device
    $ .75 on each pair of the next 100,000 pairs of devices or $.375 per device
    $ .50 on each pair of the next 100,000 pairs of devices or $.25 per device
    $ .25 on each pair of all additional pairs of devices or $.125 per device.
    LICENSEE shall not pay royalties to SOLEX on finished or unfinished lenses (i. e. lenses upon which two lens surfaces are already formed) when purchased from SOLEX or from a licensee of SOLEX, and such lenses shall not be counted in the total number of devices sold by LICENSEE under the schedule hereinabove."

and conditions more favorable" than those given to Frontier, and that PCL had the duty in April, 1962 when the settlement was made to "promptly offer licensee (Frontier) the benefit of such more favorable conditions." PCL denies giving "more favorable terms" to Butterfield, pointing out that it received substantial consideration from Butterfield for the grant of the licenses. Secondly, PCL claims compliance with the license agreement because, by its letter of October 25, 1962, it gave Frontier and other licensees the opportunity to obtain a revised license if they were able to give PCL consideration similar to that given by Butterfield. In addition, PCL argues that the grant of license to Butterfield was "for the manner of settlement for past infringement" and therefore relieved PCL of the duty to grant a revised license to Frontier.

Plaintiff PCL demands an accounting and payment for all lenses manufactured by Frontier from October, 1962 until June, 1967 when the patent expired. Defendant, Frontier, not only resists payment for this period but counterclaims for sums paid to PCL for the period April, 1962 until October, 1962.

When Frontier learned of the PCL-Butterfield settlement, it explicitly informed PCL, by letter of May 14, 1963, that it chose not to terminate the agreement. The theory of the Frontier defense is that PCL breached the license contract when it granted the license to the Butterfield interests.

To better understand the present controversy between PCL and Frontier,

part of the history of prior litigation between PCL and Butterfield is set forth.

In May, 1960, PCL purchased from Butterfield a license under the Butterfield patent and, in November, 1960, acquired Solex and the rights to the Tuohy patent. These two patents were the most important in the field. Tuohy, the pioneer and senior, was entitled to a broad and liberal construction. PCL v. Butterfield, 366 F.2d 338, 341 (9th Cir. 1966).

In 1960, Solex, PCL's predecessor, sued Butterfield in the District Court in Oregon (Civil No. 60–107), alleging Butterfield had infringed the Tuohy patent, and sought damages. Butterfield denied any infringement and filed counterclaims for infringement of the Butterfield patent. Butterfield's motion for a temporary injunction restraining PCL (as the successor to Solex) from suing licensees of Butterfield for infringement was granted by the court. Solex Laboratories, Inc. v. Butterfield, 202 F.Supp. 461. This seriously hampered PCL's licensing program.

A settlement agreement between PCL and Butterfield was entered into in April, 1962 and, at the trial before this court, the settlement documents were received in evidence. The April, 1962 settlement was short-lived and, in July, 1963, Butterfield sued PCL claiming a breach of the settlement agreement. In PCL v. Butterfield, 366 F.2d 338 (9th Cir. 1966), the court summarized the settlement agreement.[2]

---

2. PCL v. Butterfield, 366 F.2d 338, 340 "The Oregon suit into which Plastic had moved as plaintiff ended by compromise in April, 1962. Solex Labs, Inc. v. Butterfield, 202 F.Supp. 461 (D.Or.1961). Pursuant to the agreement there was entered, with the consent of the parties, a judgment in which it was declared that the Butterfield patent was valid, that it had been infringed by Solex, Plastic's predecessor, and that the amount of infringement damages had been settled by agreement between Butterfield and Plastic. Under the terms of the com-

promise, Butterfield and the Butterfield corporation dismissed, with prejudice, all claims against Plastic (other than the settled infringement claim against Solex) and granted to Plastic a royalty-free license to the Butterfield patent. In exchange, Plastic released Butterfield, his licensees, and the Butterfield corporation from all claims of infringement of the Tuohy patent to the date of the agreement, gave to Butterfield the right to grant royalty-free licenses under the Tuohy patent to four Butterfield licensees and to the Butterfield corporation, so long as it was held

In the agreement, PCL granted to Butterfield "the right to grant royalty free licenses under the Tuohy patent to four Butterfield licensees and to the Butterfield corporation." Frontier's argument is that this grant violated Section 8 of the PCL-Frontier license since it was made on "more favorable terms" than those granted to Frontier.

At the present trial, the court did not consider the offered testimony of PCL's general counsel concerning the background of the settlement agreement.

On October 25, 1962, after entering into the settlement with Butterfield, PCL sent a letter to its licensees, including Frontier, informing them of the settlement terms.[3] The letter explained

---

by the Butterfield family, and agreed to pay Butterfield the sum of approximately $66,000. It was specifically agreed that both Plastic and Butterfield might, by solicitation, seek to enter into license agreements with existing licensees of the other and that both might enforce their rights to their respective patents against such licensees in the future."

3. (Letter of IRWIN PANTER, General Counsel for The Plastic Contact Lens Company)

"October 25, 1962
TO: THE LICENSEES OF
THE PLASTIC CONTACT LENS
COMPANY
Gentlemen:

To fulfill our obligations under our licensing agreements, this letter is being sent to advise you of the circumstances under which The Plastic Contact Lens Company recently settled its patent litigation with George H. Butterfield, Sr. and his company, George H. Butterfield & Sons.

In that litigation Solex Laboratories, Inc. and The Plastic Contact Lens Company, as its successor, were charged with infringing Butterfield U. S. patent No. 2,544,246. Our patent counsel, Bair, Freeman & Molinare, who conducted the litigation and made the settlement, advised us that such litigation necessarily required the expenditure of substantial costs of litigation and exposed us to the risks involved in litigation.

To avoid this situation, a settlement agreement with the Butterfield interests was entered into, under which The Plastic Contact Lens Company was fully released from all claims alleging infringement of the Butterfield patent. As consideration for such release, The Plastic Contact Lens Company invested in George H. Butterfield & Sons the power to grant a non-exclusive, non-transferable, royalty-free license under Tuohy patent No. 2,510,438 to George H. Butterfield & Sons and to the four other companies which at that time were licensed under the Butterfield patent, namely, Tit-

mus Optical Company, Rogers Brothers, Southern Contact Lens Laboratories, Inc., and Utah Optical Supply Company.

These four last-named companies were included in the arrangement because of the Butterfield interests had indemnified them against liability arising from their infringement of the Tuohy patent. Their licenses under the Tuohy patent are conditioned upon their continuing to pay royalties under the Butterfield patent, and their license does *not* include the rights under our patent application Serial No. 701,153.

By thus settling the litigation with Butterfield, The Plastic Contact Lens Company not only relieved itself of possible material liability for past infringement, but also of substantial litigation expense which would have been incurred notwithstanding a decision in our favor.

Under the circumstances, it is clear that our settlement with the Butterfield interests did not constitute the granting of a license under Tuohy patent No. 2,510,438 'upon terms and conditions more favorable' than those provided in our standard license under that patent.

However, to fulfill all technical requirements of the license agreement, we are, by this letter, notifying all licensees that The Plastic Contact Lens Company stands ready to extend a revised license under the Tuohy patent No. 2,510,438 to any licensee which (a) deems our settlement with Butterfield to be 'more favorable' than the terms of our standard license, and (b). is in a position to grant to The Plastic Contact Lens Company consideration equivalent to that which we received from the Butterfield interests.

To qualify for this offer, a licensee must show consideration equivalent to those involved in that case of which the paramount ones are: (a) that it owns a U. S. patent that has been infringed by The Plastic Contact Lens Company, and (b) that such infringement has been of such magnitude as to yield a contingent liability comparable to that released by Butterfield.

To the best of our knowledge, none of our licensees is in such a position; in-

PCL's position that the terms of the licenses granted to the Butterfield interests were not "more favorable" than those in the Frontier license. Nevertheless, by the letter, PCL offered revised terms to any licensee who considered the Butterfield license "more favorable" and who was in a position to grant PCL consideration equivalent to that received from Butterfield.

deed, so far as we know, none of our licensees holds *any* U. S. patent applicable in any manner to our products.

Should any of our licensees consider itself qualified to invoke paragraph 8 of our standard license agreement by virtue of our settlement with Butterfield, we should promptly be so advised in writing.

Very truly yours,
/s/ Irwin Panter
IRWIN PANTER
General Counsel for
The Plastic Contact
Lens Company"

IP:vm

4. (Letter of FRONTIER CONTACT LENSES, INC.)
"May 14, 1963
Irwin Panter, Esq.
Panter, Nelson, Rothstein & Albert
10 South LaSalle Street
Chicago 3, Illinois
RE: Plastic Contact Lens Company
Dear Sir:
This will acknowledge your letter of April 24 referring to a claim against us by Plastic Contact Lens Company for royalties under our license agreement with that company.

Under date of March 22, I advised Plastic Contact Lens Company that we had ceased paying royalties under our agreement when we received information concerning the arrangement made by Plastic with the Butterfield interests. We have now been advised by our counsel that we are fully justified in discontinuing such royalty payments, in view of the terms of our agreement and the terms of licenses subsequently granted by Plastic to others, through Butterfield, under Tuohy patent No. 2,510,438.

More particularly, we are advised as follows:

Paragraph 8 of our license agreement with Plastic (assignee of Solex) provides that if Plastic should thereafter grant a license to another party under the Tuohy patent 'upon terms and conditions more favorable than those herein accorded, except for the manner of settlement

Upon receipt of this letter, Frontier stopped payment but continued to make monthly accountings. When no payment was received, PCL sent several dunning letters to Frontier. In March, 1963, Frontier informed PCL that it had stopped payment because of the Butterfield settlement, and that it was in the process of conferring with counsel. On May 14, 1963, Frontier wrote to PCL[4]

for past infringement, SOLEX (Plastic), shall promptly offer LICENSEE the benefit of such more favorable terms and conditions, which upon acceptance shall be retroactive to the date that such more favorable terms and conditions were accepted by said other person, firm or corporation.'

Subsequent to our above-noted agreement with Plastic, the latter, through Butterfield, granted royalty-free licenses under the Tuohy patent and for the life thereof to certain licensees of Butterfield, that is, licensees under Butterfield patent No. 2,544,246. The royalty-free licenses so granted terminate only if the license under Butterfield U. S. Letters Patent No. 2,544,246 terminates or the licensee is more than six months in arrears in his royalty payments under the Butterfield license agreements.

At the time when Plastic granted such royalty-free licenses to these licensees of Butterfield, we were also a licensee of Butterfield under patent No. 2,544,246. Our license agreement with Butterfield has not been terminated nor are we six months in arrears in payments as provided for in our Butterfield license agreement.

While it appears that Butterfield agreed to indemnify these other licensees against liability arising from their possible infringement of the Tuohy patent, this circumstance could have no bearing here. Any such indemnity agreement constituted at most an added consideration from Butterfield to these licensees and obviously does not alter the dominating fact that these other licensees as subsequently licensed by Plastic, were accorded more favorable terms than those accorded to us.

It is clear that whatever was agreed upon as the terms applicable to Butterfield for his rights acquired from Plastic under the Tuohy patent, the only terms applicable to these other Butterfield licensees for their royalty-free licenses acquired from Plastic under that patent were those providing for termination of the license from Plastic upon termination

claiming that the grant of the licenses to the sublicensees of Butterfield was a violation of Section 8 of the PCL-Frontier license agreement. Frontier pointed out that, at the time of the grant to the Butterfield licensees, Frontier was in the same position as these licensees since it was a paid-up licensee of Butterfield. The only difference admitted was that Butterfield had agreed to indemnify the other licensees for infringement of the Tuohy patent, but had not agreed to indemnify Frontier. Arguing that this difference was of no consequence, Frontier demanded the same royalty-free license granted to the four Butterfield licensees. Frontier's letter continued:

"We do not now choose to exercise our right to cancel our agreement with Plastic on account of this default."

The letter further demanded return of the payments made to PCL for the period May, 1962 to October, 1962.

After receipt of this letter, PCL filed suit in July, 1963 demanding an accounting pursuant to the license agreement. At the trial, Frontier, in addition to making the argument set forth in its May 14, 1963 letter, also claimed that the grant of a license to Butterfield itself violated the agreement.

■ Concerning these arguments, the court finds that there was substantial consideration given by Butterfield to PCL for the licenses received for itself and for its sublicensees. Frontier's argument that the settlement agreement was a complete capitulation by PCL to the demands of Butterfield is rejected. PCL received a paid-up license to the Butterfield patent, the right to solicit Butterfield licensees for the Tuohy patent, and the right to sue for infringement of the Tuohy patent. The settlement agreement also relieved PCL from the heavy burden of the District Court injunction which tied up its licensing program. It may be difficult to put a dollar value on this consideration, but it was substantial. Beyond stating that the license granted to the Butterfield interests was on "more favorable terms," Frontier offered no evidence whatever to support its argument. The court concludes that the grant to the Butterfield interests was not on "more favorable terms" and did not violate the license agreement. The fact that Frontier was also a Butterfield licensee does not give

of or non-payment under the Butterfield license, as previously mentioned. It is equally clear that in view of Paragraph 8 of our agreement with Plastic, the benefit of the more favorable license terms and conditions accorded by Plastic to these other licensees of Butterfield should have been offered promptly by Plastic to us, to be effective as of the earliest date when they were first accepted by a licensee included in these other licensees. Plastic's failure to make this offer to us was in default of its obligation under Paragraph 8.
We do not now choose to exercise our right to cancel our agreement with Plastic on account of this default, as provided by Paragraph 12. However, we do insist upon our right under Paragraph 8 to have the benefit of the royalty-free Tuohy patent licenses accepted by these other licensees of Butterfield, on the terms previously mentioned.
We understand that the terms and conditions of Plastic's licenses to these other licensees of Butterfield were accepted by at least one of them in May of 1962. Therefore, by a copy of this letter which we are sending to Plastic, we demand that it return to us the total amount which we paid as royalties to Plastic on account of the period since May, 1962, as that amount was not required to be paid under the agreement and was paid mistakenly due to Plastic's failure to make the offer as required by Paragraph 8.
We are enclosing with the copy of this letter directed to Plastic, reports to Plastic as Licensor pursuant to Paragraph 3(a), of our License Agreement. These reports cover the months of October, 1962 through April, 1963.
Sincerely yours
FRONTIER CONTACT LENSES, INC.
/s/ Allan A. Isen
Allan A. Isen
President
AAI:gd
CC to:   Plastic Contact Lens Company
59 East Madison Street
Chicago 3, Illinois"

Frontier the same standing as the others. Butterfield had agreed to indemnify the other four licensees for infringement of the Tuohy patent, but did not have this agreement with Frontier. The four indemnified licensees paid Butterfield for the added protection. Further, this court finds, as the court did in PCL v. Guaranteed Contact Lenses, 283 F. Supp. 850 (S.D.N.Y.1968), that the consideration given by Butterfield was not only for the grant given to Butterfield, but also for the grant given to the four licensees.

Assuming for the moment that the grant to the Butterfield interests was on "more favorable terms" and violated the agreement, what follows? Frontier chose not to terminate the license agreement but continued to manufacture lenses under the protection of the Thohy patent.

In Specialties Development Corp. v. C-O-Two Fire Equipment Co., 207 F.2d 753 (3d Cir. 1953), the court construed New York law in a case where the licensor breached the agreement by failing to prosecute infringers of the patent. The licensee, knowing of the breach, continued to take advantage of the patent and manufacture articles under it. The court held that the licensee was obliged to pay royalties for the use of the patent. In the *Specialties Development* case, the court followed Rosenthal Paper Co. v. National Folding Box & Paper Co., 226 N.Y. 313, 123 N.E. 766 (1919), where, under similar circumstances, the licensee was obliged to pay even though he was not aware of the breach of the contract by the licensor.

■ Therefore, since Frontier had the advantage of the Tuohy patent and continued to manufacture lenses under it, it is obliged to pay royalty even if the grant to the Butterfield interests was on "more favorable terms."

In addition, PCL, by its letter of October 25, 1962, extended to any licensee who could show that the terms were "more favorable" the right to a revised license on terms equivalent to those granted to Butterfield. Because of this offer, it complied with Section 8 of the license agreement even if the grant to the Butterfield interests was on "more favorable terms." See Plastic Contact Lens v. Guaranteed Contact Lenses, supra. Frontier merely demanded a "royalty-free Tuohy patent license" and took no other steps to meet the offer of PCL.

At the trial, Frontier made additional arguments not urged before in the pleadings or pretrial meetings. The first is that it should not be required to pay for lenses not manufactured under the Tuohy patent; the second, that it discontinued using the Tuohy patent some time during 1962 and, therefore, should not be required to pay after the use of the patent ended. Both arguments depend upon whether it is possible to tell one lens from another in a practical routine fashion. Even Dr. Isen, one of the defendants, admitted this could not be done. He testified:

"The lenses, the patents that we are talking about are patents which describe methods of fitting the lenses and we manufacture lenses according to the orders that doctors send us and so we cannot always tell under whose patent they may be fitted under by the doctor."

The court, in PCL v. Butterfield, 366 F.2d 338 (9th Cir. 1968), 340, 341, described the Tuohy and the Butterfield patents:

"There is, of course, a technical difference in the arts defined in the two patents. The Tuohy patent calls for a contact lens, which, on its inner surface, has a curve of greater radius than the portion of the eye which it covers. This is to provide 'a small but gradually increasing clearance' between the lens and the tissue of the eye, thus allowing for lubrication which is claimed to be desirable. * * * Butterfield patent generally discloses a contact lens with two or more concentric curves on the inner surface, designed to conform to the

eye's underlying curvature throughout the area covered by the lens."

Further, at Page 344, the court went on to comment about the similarity between the two devices:

"In reviewing the record, one is struck by the similarity of the inventions taught by the two patents. One undertaking to construct a device under the teachings of the one patent, because of variations in the curvature of human eyes and the close precision required, confronted almost certain risks of infringing the other patent. It was inevitable, as the history reveals, that licensees of Butterfield would be exposed to claims of infringement of the Tuohy patent and that licensees of Plastic would be charged with trespass upon the rights of Butterfield."

Frontier had no systematic method of trying to determine which lens it was manufacturing, or which patent it was manufacturing a lens under, and routinely accounted for and paid a royalty for all of the lenses manufactured. The purpose of the agreement was to pay small sums for all devices made.

■ Therefore, the court finds that, when Frontier entered into the agreement, it understood that it was to account and pay PCL for all devices manufactured, whether under the Tuohy, Butterfield or any other patent covering corneal contact lenses. The evidence shows that Frontier followed this practice and paid for all devices until October, 1962. After that, Frontier continued to manufacture lenses under the Tuohy patent and continued to account for all lenses manufactured until the accounting stopped.

Therefore, the court rejects the argument of Frontier that it discontinued using the Tuohy patent after 1962. Furthermore, the same royalty provision used in this license calling for the payment of sums for all devices made, whether under the Tuohy, Butterfield or another patent, was approved by the court in PCL v. Butterfield, supra.

However, the court finds that the licenses granted to the Butterfield interests were not "for the manner of settlement for past infringement." The decision in favor of the plaintiff is not based upon this exception to Section 8 of the agreement.

On January 5, 1966, Frontier filed a certificate of dissolution with the State of New York and distributed all of its assets to the individual defendants who were the stockholders of the corporation.

■ Section 1005(a) (3) of the New York Business Corporation Law, McKinney's Consol. Laws, c. 4, directs that, upon the dissolution of a corporation, provision must be made for the payment of liabilities before the distribution of assets to the shareholders. The defendant shareholders hold the assets which they received, in trust for the benefit of creditors. United States v. Oscar Frammel & Bros., 50 F.2d 73 (2d Cir. 1931), cert. denied 284 U.S. 647, 52 S.Ct. 25, 76 L.Ed. 549.

The individual defendants are liable jointly and severally. The counterclaim of defendants is dismissed.

The defendants are directed to account to the plaintiff for all of the plastic lens devices manufactured and sold during the term of the license agreement.

If the parties cannot agree on the amount of the liability of each defendant, the plaintiff shall, thirty days from the date of this order, prepare an order on notice for an accounting by a master to be appointed by the court.

So ordered.