**SEARLE ANALYTIC INC., Plaintiff,**
**v.**
**OHIO–NUCLEAR, INC., Defendant.**
**No. 74 C 1167.**

United States District Court,
N. D. Illinois, E. D.
July 2, 1975.

Thomas F. Ryan, Sidley & Austin, Chicago, Ill., for plaintiff.

Thomas B. McNeill, Mayer, Brown & Platt, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

KIRKLAND, District Judge.

This cause comes before the court on plaintiff's motion for summary judgment. The action is brought by Searle Analytic Inc. ("Searle") against Ohio-Nuclear, Inc. ("Ohio") to recover royalties allegedly due Searle pursuant to a patent licensing contract. Ohio defends on grounds that two contractual provisions of the licensing agreement relieved it from any obligation to pay during the period royalties were withheld. Other defenses earlier asserted by Ohio have been rendered moot, hence the court does not deal with them here.

Defendant first relies upon Article 5 of the licensing agreement. Article 5 provides that Ohio shall have the right to abate royalty payments, upon notice to Searle of a substantial infringement of the licensed patent, if Searle has not within six months after said notice:

(.1) Initiated a legal action for infringement of the '057 Patent against the said alleged Substantial Infringer which remains pending, and is being *actively* prosecuted. . . . (emphasis added)

There is no dispute that Searle's infringement suit against Nuclear Data, Inc. was filed and pending on an active calendar during the period in issue here; instead the controversy is whether Searle was "actively" prosecuting that infringement action during its pendency.

■■ Determining whether a pending case is being "actively prosecuted" necessarily involves inquiry into the court's conduct of its own calendar, inasmuch as the court's function includes supervising and expediting litigation before it. It would necessarily include also examination and evaluation of the court's activity regarding that specific case. In this Court's opinion, the parties may not make that a part of their contract.

This is not to say that court rulings or other evidence indicating failure to prosecute an action may not be made the basis of challenge under the contract provisions in question; but the challenging party bears a heavy burden, of establishing that failure, which has not been met here.

■■ Deliberate delay is alleged, inter alia, on the basis that the court informally stayed litigation against the alleged infringer pending outcome of a suit litigating Searle's right to the patent in the first instance. It is Ohio's position that Searle should have simultaneously prosecuted the infringement action even though an adverse decision in the other action would moot the infringement suit. Contract provisions may not take precedence over common sense utilization of judicial resources. Consequently, decisions by the courts in furtherance of judicial economy may not be transformed into the basis for a charge of deliberate delay. This Court holds that Searle actively prosecuted the infringement action within the meaning of Article 5 of the licensing contract.

■ Defendant next urges that the "Most Favored Nations" clause of Arti-

cle 6 of the licensing contract acts to relieve Ohio from the obligation to pay royalties during the period in which an alleged substantial infringement (Nuclear Data, Inc.) was being prosecuted after Ohio's settlement. Ohio's reasoning is that the infringer was forgiven all infringements for that period as part of the later settlement agreement.

The pertinent part of the "Most Favored Nations" clause states:

. . . [if] another sublicensee under the '057 patent has the benefit of a lower effective royalty than the royalty which is set forth in Paragraph 3.1 of this agreement and/or the benefit of other provisions which are more favorable to such sublicensees than are accorded to Ohio under this Agreement; then, and in any such case, Searle shall immediately give written notice thereof to Ohio, and the lower effective royalty and/or the benefits under the significantly more favorable provisions shall be deemed to be effective as to Ohio . . . as of the date when the other sublicensee first had the benefit thereof.

. . .

It is Ohio's position that settlement of another infringement action at a later time, with a provision forgiving prior infringements to the approximate date of settlement, constitutes more favorable treatment under the above clause. Searle, on the other hand, argues that a settlement forgiving past infringements does not constitute a "provision" under the "Most Favored Nations" clause, merely because the litigation was settled subsequent to Ohio's.

Searle licensed Ohio on July 1, 1973 after settlement of an infringement action wherein Ohio was forgiven past infringements in return for its agreement to pay royalties on future use of the patented item. Searle licensed Nuclear Data, Inc. ("Nuclear Data"), on November 1, 1974 in a settlement forgiving past infringements in return for an agreement to pay royalties on future use

of the patented item. The issue is whether Ohio can, under the "Most Favored Nations" clause, abate royalties for the sixteen month period between settlements on grounds that the later settlement date with Nuclear Data constitutes a more favorable provision.

This Court finds that the "Most Favored Nations" clause is unambiguous and that there is controlling precedent on this issue.

The court in *Universal Oil Products Co. v. Vickers Petroleum Co.*, 41 Del. 238, 19 A.2d 727 (1941), focused on the purpose of a "favored nations" clause:

Specifically it provides that, if Universal shall enter into any license agreement, or shall modify any existing license agreement providing for a lower or more advantageous royalty rate, then and thereafter the licensee shall have the same benefit.

In response to defendant's argument that forgiveness of past infringement constituted a "retroactive implied license", the court said:

A license in its very nature is prospective in operation. . . . Acceptance of [the "retroactive implied license"] argument would mean that the plaintiff, if it should proceed to offer protection to the defendant against competition from infringers by licensing them on equal terms with the defendant, would be compelled to exact payment for the infringer's past operations at the same royalty rate, or else forfeit its right to collect from the defendant the royalties accrued during the period of infringement.

While it is true that in the *Vickers* case plaintiff was under no contractual duty to prosecute infringers, the logic of that case equally applies where plaintiff *is* under a duty to stop infringement. The duty to stop infringement by others does not imply, under the "Most Favored Nations" clause litigated here, a duty to recover a sum certain for past infringements by Nuclear Data in order not to

forfeit the right to royalty payments from Ohio during the period in question.

Ohio was sued for infringement and settled the case by agreeing to pay future royalties if past infringements were forgiven. At the same time Nuclear Data was also being sued for infringement, although that case was not settled until almost a year and a half later. Each case was settled on the same terms. If nothing else, these uncontested facts establish that Searle was seriously pursuing its infringement litigation, and that economic reality dictates need for compromise settlement terms if parties are to avoid litigating to final conclusion. The contract language does not prevent Searle from forgiving past infringements in order to reach a settlement.

The Court is not saying the parties could not have agreed to the interpretation Ohio asserts, had they chosen to do so, but rather that Ohio's interpretation does not comport with the plain and reasonable meaning of the contractual language.

Ohio cites *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 482 F.2d 317 (6 Cir. 1973), for the proposition that the effective date of a later licensing agreement is a "provision" of the "Most Favored Nations" clause. That case however, relies upon *De Forest Radio Telephone Co. v. United States*, 273 U.S. 236, 47 S.Ct. 366, 71 L.Ed. 625 (1927) which held license will be implied where the licensor consents to or assists in the infringement of its patent. The Supreme Court in *De Forest* was talking about constructive license. *Shatterproof Glass,* on different facts, held that forgiveness of past infringements in return for a monetary settlement was in essence a royalty charge for past use of the patented item. Retroactive implied

license was found because the sizable monetary settlement, given in return for release from prior infringement, computed out to a more favorable royalty rate per infringement than the rate plaintiff had paid. The consent concept of *De Forest* was implied by the terms of settlement. That is not the situation here.

It has been established that Searle's concern was to stop the infringement of Nuclear Data. In order to achieve that goal, Searle waived compensation for past infringements. Consent cannot be imputed to Searle merely because Searle was desirous of stopping future infringement and willing to forego any compensation rights it may have had under law in order to achieve that end.

If it was the intent of the parties to prevent Searle from forgiving infringements beyond July 1, 1973 in order to achieve settlement, such intent was not expressed in the "Most Favored Nations" clause of the contract.

Ohio also argues that if the interpretation advocated by Searle is adopted by the Court, Searle could avoid the impact of the "Most Favored Nations" clause by setting the effective date for a licensing contract with an infringer at a time well beyond any settlement date. Such an event, however, is clearly distinguishable from the case at bar, and our holding does not encompass such a factual situation.

This Court holds that the effective date of the Nuclear Data licensing contract is not a "provision" within the meaning of the "Most Favored Nations" clause of Article 6 of the contract.

Plaintiff's motion for summary judgment is granted.

Defendant is ordered to pay interest and costs of the action, attorneys' fees excepted.