The **PLASTIC CONTACT LENS COMPANY, Plaintiff-Appellee,**

v.

**FRONTIER OF THE NORTHEAST, INC., Defendant-Appellant,**

**Frontier Contact Lenses, Inc., Defendant-Appellant,**

**Allan A. Isen, George F. Sitterle, and William Feinbloom, Defendants-Appellants.**

**Nos. 436, 506, Dockets 35376, 35680.**

United States Court of Appeals, Second Circuit.

Argued March 1, 1971.

Decided April 1, 1971.

Marvin M. Karpatkin, New York City (Karpatkin, Ohrenstein & Karpatkin, New York City, Irwin Panter and Charles R. Sandler, Kavinoky, Cook, Hepp, Sandler and Gardner, Buffalo, N. Y., Panter, Nelson & Bernfield, Chicago, Ill., on the brief), for plaintiff-appellee.

Victor T. Fuzak, Buffalo, N. Y. (Hodgson, Russ, Andrews, Woods & Goodyear and Frederick A. Muller, Buffalo, N. Y., on the brief), for defendants-appellants Frontier of the Northeast, Inc., Frontier Contact Lenses, Inc., Allan A. Isen and George F. Sitterle.

Moses M. Falk, New York City, for defendant-appellant William Feinbloom.

Before LUMBARD, Chief Judge, KAUFMAN and ANDERSON, Circuit Judges.

LUMBARD, Chief Judge:

In this action, plaintiff, The Plastic Contact Lens Co. (Plastic), sought an accounting and the payment of royalties under a nonexclusive patent license agreement between it and defendant Frontier Contact Lenses Inc. (Frontier).[1] After trial without a jury in the Western District of New York, Judge John T. Curtin, by order dated October 29, 1969, upheld Plastic's claim and directed and approved an accounting by a special master. Frontier and the other defendants appeal from Judge Curtin's order. For the reasons set forth below, we affirm.

[1]. Before the beginning of this action, the defendant changed its name from Frontier of the Northeast, Inc. to Frontier Contact Lenses, Inc. On January 6, 1966, the corporation was dissolved; and on January 5, 1968, its liquidating stockholders, Allan A. Isen, George F. Sitterle, and William Feinbloom, were added as defendants by order of Judge John O. Henderson.

The facts of this case are fully and accurately presented in Judge Curtin's opinion, reported at 324 F.Supp. 213 (W.D.N.Y.1969). Briefly, they are as follows: On January 1, 1961, Frontier and Solex Laboratories, Inc. (Solex), both of which were engaged in the manufacture and sale of contact lenses, entered into a license agreement by which Solex granted to Frontier a nonexclusive license to manufacture and sell corneal contact lenses under United States Patent No. 2,510,438 (the Tuohy patent), which Solex owned. In return, Frontier was required to make monthly accountings and payments to Solex for all corneal lenses manufactured.[2] Paragraph 8 of the agreement provided:

"Solex agrees that in the event it should hereafter grant a license to another person, firm or corporation under said Patent No. 2,510,438, or under any other United States patent or application licensed hereunder upon terms and conditions more favorable than those herein accorded, except for the manner of settlement for past infringement, Solex shall promptly offer Licensee the benefit of such more favorable terms and conditions, which upon acceptance shall be retroactive to the date that such more favorable terms and conditions were accepted by said other person, firm or corporation."

On April 12, 1961, Solex assigned the Tuohy patent to the plaintiff, Plastic, along with all its rights as licensor under certain nonexclusive license agreements including the one with Frontier. The Tuohy patent expired on June 6, 1967.

At the time of the assignment, Plastic had a license from George H. Butterfield and George H. Butterfield & Sons, Inc. (Butterfield) to manufacturer contact lenses under United States Patent No. 2,544,246 (the Butterfield patent). The Tuohy patent and the Butterfield patent are very similar and were the two most important in the field. In 1960, Plastic's predecessor, Solex, sued Butterfield for infringement of the Tuohy patent, and Butterfield counterclaimed for infringement of the Butterfield patent. In April 1962, Plastic and Butterfield reached a settlement under which Plastic released Butterfield and its licensees from all claims of infringement of the Tuohy patent, paid Butterfield $66,000, and granted Butterfield the right to grant royalty-free licenses under the Tuohy patent to itself and to four named Butterfield licensees.[3] In return, Butterfield dismissed all claims against Plastic and granted Plastic a royalty-free license under the Butterfield patent.[4]

On October 25, 1962, after entering into the settlement with Butterfield,

2. Paragraph 2(a) of the agreement provides:

(a) Licensee, solely for the purpose of accounting hereunder, agrees to pay to Solex royalties upon such devices consisting of pieces of finished material in which two lens surfaces are applied thereto and which are adapted to be or are made into a finished or unfinished corneal contact lens calculated in accordance with the following schedule on all such devices sold by Licensee: $1.00 on each pair of the first 150 pairs of devices or $.50 per device

$.75 on each pair of the next 100,000 pairs of devices or $.375 per device $.50 on each pair of the next 100,000 pairs of devices or $.25 per device $.25 on each pair of all additional pairs of devices or $.125 per device.

Licensee shall not pay royalties to Solex on finished or unfinished lenses (i. e. lenses upon which two lens surfaces are already formed) when purchased from Solex or from a licensee of Solex, and such lenses shall not be counted in the total number of devices sold by Licensee under the schedule hereinabove.

3. Those four licensees of Butterfield were Titmus Optical Co., Utah Optical Supply Co., Rogers Bros., and Southern Contact Lens Laboratories, Inc. All four had agreements with Butterfield by which Butterfield agreed to indemnify them for infringement of the Tuohy patent.

4. The settlement agreement was summarized by the court in Plastic Contact Lens Co. v. Butterfield, 366 F.2d 338, 340 (9th Cir. 1966), cert. denied 385 U.S. 1009, 87 S.Ct. 717, 17 L.Ed.2d 547 (1967).

Plastic sent a letter to its licensees, including Frontier, informing them of the settlement terms and explaining its position that the terms of the licenses granted to the Butterfield interests were not "more favorable" than those in the Frontier license. Nevertheless, the letter did offer Plastic's licensees the opportunity to get a revised license if they would give consideration similar to that given by Butterfield.

Upon receipt of this letter, Frontier stopped payment of royalties to Plastic. It wrote to Plastic arguing that Plastic had breached paragraph 8, the most-favored-licensee clause of their agreement, because the grant of royalty-free licenses to Butterfield and the four licensees was "upon terms and conditions more favorable" than those given to Frontier, which still had to pay royalties under the Tuohy patent. Frontier claimed that it should get a royalty-free license without paying any further consideration, since the four favored Butterfield licensees did not have to pay anything and since it too was a Butterfield licensee. Plastic refused and in July 1963 filed suit demanding an accounting pursuant to the license agreement.

The district court held that Butterfield settlement constituted consideration for the royalty-free licenses granted to Butterfield and its four licensees and thus that that grant was not on more favorable terms and conditions than the Plastic-Frontier license, since Frontier refused to give similar consideration. Judge Curtin recognized—and indeed it is undisputed—that Butterfield itself gave consideration in the settlement.[5] The question was whether the four favored Butterfield licensees paid consideration to Plastic for their royalty-free licenses. Frontier contends that they paid nothing, and hence that it, as another Butterfield licensee, was also entitled to a royalty-free license from Plastic under the most-favored-licensee clause. Judge Curtin rejected this argument, finding that the four favored licensees did pay consideration. He distinguished their situation from that of Frontier by stating:

"Butterfield had agreed to indemnify the other four licensees for infringement of the Tuohy patent, but did not have this agreement with Frontier. The four indemnified licensees paid Butterfield for the added protection. Further, this court finds, as the court did in PCL [The Plastic Contact Lens Co.] v. Guaranteed Contact Lenses, 283 F.Supp. 850 (S.D.N.Y. 1968), that the consideration given by Butterfield was not only for the grant given to Butterfield, but also for the grant given to the four licensees." 324 F.Supp. at 219.

As an alternative basis for his decision, Judge Curtin held that even if the grant of royalty-free licenses to Butterfield and the four non-parties to the Plastic-Butterfield litigation did violate the most-favored-licensee clause of Frontier's license, Frontier was nonetheless liable for the unpaid royalties, since it did not terminate the license agreement when it stopped paying royalties, but continued to manufacture lenses under the protection of the Tuohy patent.

We affirm the judgment of the district court, but we do not do so on either of the grounds relied upon by Judge Curtin in his opinion. Rather, we base our decision on the fact that, in our opinion, the Butterfield settlement came within the exception "for the manner of settlement for past infringement" in

5. Under the terms of the settlement agreement, Butterfield released all claims against Plastic for infringement of its patent, granted Plastic a royalty-free license under its patent, recognized Plastic's ownership of the Tuohy patent, granted Plastic the right to solicit Butterfield licensees for the Tuohy patent, and granted Plastic the right to convey to one of its own (Plastic's) licensees the same kind of royalty-free license under the Butterfield patent that Butterfield received with respect to the Tuohy patent as concerned the four specified Butterfield licensees. The settlement also dissolved a burdensome preliminary injunction against Plastic.

the most-favored-licensee clause, thus relieving Plastic from liability as a breacher of that clause.

Judge Curtin expressly found that the Butterfield settlement did *not* come within the above exception, but he did not give any reasons for his finding. Frontier also contends that the exception is not applicable to the licenses granted to the Butterfield interests. It argues that the exception is "for the manner of settlement for past infringement" of the Tuohy patent, not for the manner of settlement of past infringement of the Butterfield or any other patent. In the Butterfield settlement, the parties agreed and represented to the Court that Butterfield had not infringed the Tuohy patent and that Plastic had infringed the Butterfield patent. Thus, says Frontier, since there had been no infringement of the Tuohy patent, there could be no "settlement for past infringement" of that patent.

We disagree. Frontier's reading of the exception to state "except for the manner of settlement for past infringement of the Tuohy patent" is simply not what the clause says. The words which Frontier would like are used elsewhere in the license agreement to make clear that the infringement referred to is infringement of the Tuohy patent; [6] those words are not used here. Hence, even if the Butterfield settlement were for infringement of the Butterfield patent only, as Frontier argues, it would come within the exception.

Beyond this, it seems clear to us that the Butterfield settlement was for infringement not only of the Butterfield patent, but also of the Tuohy patent.

The litigation settled involved reciprocal claims of infringement of both patents. The fact that the settlement included a stipulation that Butterfield had not infringed the Tuohy patent is irrelevant, since that stipulation, having a dollar value, was merely part of the exchange of consideration in the settlement. It is not the same as a finding of no infringement by a court, after testimony and argument, and hence has no real probative value. See Plastic Contact Lens Co. v. Guaranteed Contact Lens, Inc., 283 F.Supp. 850, 853 (S.D.N.Y. 1968). The Butterfield settlement, then, did come within the above exception; and because of the indemnity arrangement between Butterfield and its four favored licensees, the indirect grant to those licensees was an integral part of that settlement. For these reasons, we hold that Plastic did not violate the most-favored-licensee clause, and hence that Frontier is liable for the unpaid royalties on the contact lenses.

The remaining question involves the extent of Frontier's liability. Frontier argues that if it is found liable, it should not be required to pay royalties for the period after 1962, since it claims that it discontinued using the Tuohy patent for its lenses some time during that year.

Judge Curtin rejected this contention on the ground that lenses manufactured under the two patents are so similar that it is not always possible for the manufacturer of the lenses to tell under whose patent the lenses are fitted by the eye doctor. Dr. Isen himself, one of the defendants, testified to this effect.[7] Moreover, Judge Curtin found that for

---

6. Such specific references to infringement of the Tuohy patent may be found in paragraphs 9, 11 and 13 of the agreement.

7. He stated:
"The lenses, the patents that we are talking about are patents which describe methods of fitting the lenses and we manufacture lenses according to the orders that doctors send us and so we

cannot always tell under whose patent they may be fitted under by the doctor." The court in Plastic Contact Lens Co. v. Butterfield, 366 F.2d 338, 340, 341, 344 (9th Cir. 1966), cert. denied, 385 U.S. 1009, 87 S.Ct. 717, 17 L.Ed.2d 547 (1967), described the two patents as follows:
"There is, of course, a technical difference in the arts defined in the two patents. The Tuohy patent calls for a

this very reason the Plastic-Frontier license agreement required Frontier to pay royalties to Plastic for all lenses manufactured, whether under the Tuohy, Butterfield, or any other patent. He found that when Frontier entered the agreement, it understood this to be the situation, particularly since Frontier had no systematic method of determining which lens it was manufacturing or what patent it was using. Judge Curtin felt further that Frontier's actual practice of paying Plastic a small sum for *all* lenses manufactured until 1962 supported his conclusion that Frontier so understood the agreement. Hence, the district court required Frontier to pay royalties to Plastic for the period after 1962. We agree.

The first question in this area is whether Frontier in fact stopped manufacturing lenses under the Tuohy patent in 1962. Frontier says that it did stop and tries to show how different the two types of lenses are. But this is a factual question, and there is sufficient evidence of similarity and confusion to support Judge Curtin's finding in this regard.

Second, even if Frontier did stop using the Tuohy patent in 1962, the license agreement required payment of royalties to Plastic on *all* lenses manufactured and sold, and hence Frontier is liable for the unpaid royalties on all such lenses manufactured and sold during the term of the license agreement, even after 1962. Although Frontier now argues that the license agreement required payment to Plastic only for so long as it used the Tuohy patent, both the wording of the agreement itself and Frontier's prior actions and practice belie its argument. The wording of paragraph 2(a) of the agreement requires Frontier to pay royalties to Plastic on "all such devices sold by Licensee." [8] Furthermore, it seems clear to us that Frontier understood that its duty was to pay on all devices, not just on those made under the Tuohy patent, for it did so until October 1962.[9] There was no mistake of fact here.

contact lens which, on its inner surface, has a curve of greater radius than the portion of the eye which it covers. This is to provide 'a small but gradually increasing clearance' between the lens and the tissue of the eye, thus allowing for lubrication which is claimed to be desirable. * * * Butterfield patent generally discloses a contact lens with two or more concentric curves on the inner surface, designed to conform to the eye's underlying curvature throughout the area covered by the lens.

\* \* \* \* \*

"In reviewing the record, one is struck by the similarity of the inventions taught by the two patents. One undertaking to construct a device under the teachings of the one patent, because of variations in the curvature of human eyes and the close precision required, confronted almost certain risks of infringing the other patent. It was inevitable, as the history reveals, that licensees of Butterfield would be exposed to claims of infringement of the Tuohy patent and that licensees of Plastic would be charged with trespass upon the rights of Butterfield."

8. Paragraph 2(a) is quoted in full in note 2 *supra*.

Moreover, the intent and effect of the words of that paragraph, "solely for the purpose of accounting hereunder," is and must be to create a different standard of royalty accounting than that limited to manufacture and sale under the teaching of the Tuohy patent. Otherwise, there would have been no reason for the deliberate insertion of the special phrase "solely for the purpose of accounting hereunder." That phrase is intended to distinguish between, on the one hand, the grant of the license, which can only be under the patent in paragraph 1, and, on the other hand, the special provisions for royalty payments otherwise than in accordance with the coverage of the patent. in paragraph 2.

9. Indeed, Dr. Isen himself testified as follows:

"Well, the payment was made on all devices because it was my understanding of the agreement that we should pay royalties on all devices according to the accounting procedures."

See note 7 *supra* and accompanying text. Moreover, Frontier's post-trial memorandum differs from its present position on

On this appeal, Frontier makes the new argument, not advanced below, that if the agreement really required its payment on *all* devices, then that agreement may have constituted a misuse of the Tuohy patent under Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), and may thus be unenforceable. In *Zenith*, the Supreme Court held that the patent owner may not "condition" his right to use his patent upon the payment of royalties on nonpatented goods. Frontier seeks to excuse its failure to make this argument below on the ground that *Zenith* was not decided until after the trial of the case at bar. It contends that since *Zenith* was not available at the time of trial, it did not present evidence of unlawful "conditioning" such as that condemned by the Supreme Court's decision.[10] Thus, Frontier concludes, the case should be remanded to give it an opportunity to present evidence of conditioning under *Zenith*.

We reject this contention. Although the trial was conducted on September 16 and 17, 1968, there was considerable post-trial briefing and the district court did not render its decision until October 29, 1969. *Zenith* was decided by the Supreme Court on May 19, 1969, more than five months prior to the district court's decision. In

addition, Plastic expressly cited *Zenith* to the district court in its reply post-trial memorandum, dated June 23, 1969. Thus Frontier and its counsel should have been aware of the *Zenith* decision at least four, and probably five, months prior to the decision of the court below. This was certainly ample time for Frontier to move to reopen the trial proceedings. Since it failed to do so, it cannot now raise this issue for the first time on appeal.[11]

Affirmed.

this issue and from its position at the trial itself. That memorandum stated:

"It is conceded that the license agreement required Frontier to pay royalties, under defined circumstances, on all lenses produced * * *. It is also clear why this arrangement was made; it would have been impractical to keep records of lenses made under the Tuohy patent. Hence the phrase 'solely for the purpose of accounting.'"

10. Indeed, on the record before us, there is no evidence of such conditioning. The conditioning condemned in *Zenith* was the licensor's use of "the power of his patent to insist on a total-sales royalty and to override protestations of the licensee that some of his products are unsuited to the patent or that for some lines of his merchandise he has no need or desire to purchase the privileges of the patent." 395 U.S. at 139, 89 S.Ct. at 1585. In inter-

preting *Zenith*, we have held that "[r]elevant criteria in determining whether there was 'conditioning' would include whether the provision was bargained for or imposed and whether the licensee made 'protestations' which were overridden. * * * [T]he mere fact of agreement is not determinative." Glen Mfg. Inc. v. Perfect Fit Industries, 420 F.2d 319, 321 (2d Cir.), cert. denied, 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970). Nothing in the present record shows that Plastic insisted on the agreement in the face of Frontier's protestations, if any were made, or that Plastic rejected alternative proposals by Frontier, if any were offered.

11. In any event, the very license agreement involved here was upheld in the face of a *Zenith* attack in Plastic Contact Lens Co. v. W. R. S. Contact Lens Laboratories, Inc. (S.D.N.Y.1970).